# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47231-7-II |
| Respondent, | |
| v. | |
| CHRISTOPHER LYONS, | PUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — We are asked to decide whether a criminal defendant facing involuntary medication to restore competency to stand trial has a procedural due process right to present an expert in his own defense. Christopher Lyons appeals the trial court's order authorizing involuntary medication arguing that he was denied due process when the trial court did not allow him to obtain his own expert. We hold that a criminal defendant has a procedural due process right to present a complete defense. In some cases the right to present a complete defense includes obtaining an expert to present admissible, relevant evidence to rebut the State's case in a *Sell* hearing. Here, the trial court violated Lyons's procedural due process right by denying him the ability to obtain and present expert testimony. We reverse the trial court's involuntary medication order.

## FACTS

In June 2014, the State charged Lyons with two counts of second degree assault. In July, the trial court ordered a competency evaluation for Lyons. The competency evaluation found that Lyons suffered from significant delusions surrounding the charges against him and that he was

incapable of assisting with his defense. The original competency evaluation also noted that an involuntary medication order would likely be necessary for competency restoration. Based on the competency evaluation, the trial court entered a 90-day competency restoration commitment order. The competency restoration order did not include an involuntary medication order. The competency evaluation following his first competency restoration period found that Lyons's delusions persisted and that he continued to be incapable of assisting with his defense. The competency evaluation recommended obtaining an involuntary medication order. The trial court entered an order for a second 90-day competency restoration commitment but the State did not seek an involuntary medication order.[1]

Approximately a month into Lyons's second competency restoration commitment, the prosecutor received a letter from Lyons's psychiatrist at Western State Hospital (WSH) requesting that the prosecutor obtain an involuntary medication order. A *Sell*[2] hearing was set for January 28, 2015. Lyons did not receive any notice regarding the specifics of the State's request or the

---

[1] Under RCW 10.77.086(1)(a)(i), the superior court may order a defendant who is found to be incompetent to stand trial to be committed for competency restoration for not more than ninety days. Prior to the expiration of the first competency restoration period, the superior court may enter an order extending the competency restoration period for another ninety days. RCW 10.77.086(3). At the end of the second competency restoration period, the charges must be dismissed without prejudice if the defendant is incompetent and the court determines that the defendant is unlikely to regain competency. RCW 10.77.086(4).

[2] *Sell v. United States*, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003). *Sell* establishes the requirements necessary for the State to obtain an order authorizing involuntary medication in order to restore competency to stand trial. Under *Sell*, the trial court may order involuntary administration of antipsychotic medication to restore a defendant's competency "if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 123 S. Ct. at 2184.

medical evidence the State intended to present.  At the hearing, Lyons requested a continuance to obtain an expert and prepare a defense which was denied.

After the State's expert testified, Lyons requested the opportunity to call an expert who would rebut specific aspects of the State's case.  Lyons stated that his expert would testify to the resistance of delusional disorder to treatment with medication and that restoration of competency through medication often took a minimum of three to four months.  The trial court denied the continuance.

The trial court entered a written order finding that "it is necessary to administer psychotropic medication to the defendant in order to restore and maintain the defendant's competency and there is no less intrusive form of treatment."  Clerk's Papers (CP) at 101.  At the hearing presenting the trial court's ruling, Lyons made a motion to reconsider based on a renewed request to present expert testimony in which counsel noted that she had met with an expert and the Department of Assigned Counsel had approved funding for the expert.  The trial court denied Lyons's motion to reconsider.  Based on the trial court's order, Lyons was involuntarily medicated.

At the end of the second competency period, a competency evaluation found that, even after administration of antipsychotic medication, Lyons's delusions persisted and that he continued to be incapable of assisting in his defense.  Based on the competency evaluation, the trial court found Lyons incompetent to stand trial.  The trial court also found that Lyons was unlikely to be restored to competency "at any time in the foreseeable future."  CP at 123.  Based on the trial court's findings, the criminal charges against Lyons were dismissed, and he was committed

No. 47231-7-II

pending an evaluation for civil commitment.[3]  A commissioner of this court granted Lyons's motion for discretionary review.

ANALYSIS

Lyons argues that the trial court violated his procedural due process right to present a complete defense by denying him the ability to present a defense expert.  We hold that a criminal defendant has a procedural due process right to present a complete defense that in some cases includes obtaining an expert to present admissible, relevant evidence to rebut the State's case in a *Sell* hearing.

We review questions of law, including constitutional due process guaranties, de novo. *State v. Derenoff*, 182 Wn. App. 458, 465, 332 P.3d 1001 (2014).  Procedural due process prohibits the State from depriving an individual of protected liberty interests without appropriate procedural safeguards.  *Derenoff*, 182 Wn. App. at 466.  "Procedural due process '[a]t its core is a right to be meaningfully heard, but its minimum requirements depend on what is fair in a particular context.'" *Derenoff*, 182 Wn. App. at 466 (alteration in original) (quoting *In re Det. of Stout*, 159 Wn.2d 357, 370, 150 P.3d 86 (2007)).

There is "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v.*

---

[3] While the motion for discretionary review was pending, the State moved to dismiss this appeal based on mootness.  A commissioner of this court ruled that this case presented questions of continuing and substantial public interest and denied the State's motion. *See In re the Detention of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986).  The only issue which presents an issue of continuing and substantial public interest is Lyons's procedural due process claim.  Accordingly, we review Lyons's procedural due process claim, but decline to review any other issues because they are moot and do not raise an issue of continuing and substantial public interest.

4

*Harper*, 494 U.S. 210, 110 S. Ct. 1028, 1036, 108 L. Ed. 2d 178 (1990). "The involuntary injection of such drugs represents an interference with a person's right to privacy, right to produce ideas, and ultimately the right to a fair trial." *State v. Hernandez-Ramirez*, 129 Wn. App. 504, 510, 119 P.3d 880 (2005) (citing *Riggins v. Nevada*, 504 U.S. 127, 134, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992)). The liberty interest in avoiding the unwanted administration of antipsychotic drugs gives rise to both substantive and procedural due process considerations. *Harper*, 110 S. Ct. at 1036.

Although *Sell* allows for the involuntary administration of antipsychotic medication for trial competence under some circumstances, the Court noted such circumstances may be rare. *Sell*, 123 S. Ct. at 2184. And the Court noted that "[t]here are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds [of dangerousness or incompetence] *before* turning to the trial competence question." *Sell*, 123 S. Ct. at 2185. But in the event a trial court must make a determination of whether involuntary medication is justified for trial competency purposes, the *Sell* factors are meant to guide the court in making the "ultimate constitutionally required judgment." *Sell*, 123 S. Ct. at 2186. The court must consider, "the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of antipsychotic drug treatment" and conclude that the "need for that treatment [is] sufficiently important to overcome the individual's protected interest in refusing it." *Sell*, 123 S. Ct. at 2186.

In a *Sell* hearing, testimony from an expert is highly significant to the defendant's opportunity to be heard. *Sell* requires a highly fact-specific inquiry into, among other things, the types of antipsychotic medication that will be administered to the defendant, the side effects of the medication, and the medication's likelihood of timely and successfully restoring the defendant's

competency. 123 S. Ct. at 2184-86. If the defendant intends to challenge the appropriateness of a certain medication, the medication's effectiveness, or the severity of the medication's side effects, the defendant would most likely need to present medical evidence through expert testimony. Therefore, in some cases a trial court violates the procedural due process requirement to provide a criminal defendant with the opportunity to present a complete defense at a *Sell* hearing when it denies a defendant the ability to present an expert who would dispute the State's medical evidence and who would provide medical evidence as to why the defendant should not be involuntary medicated.

However, the procedural due process right to present an expert at a *Sell* hearing is not without limitations. For example, a criminal defendant has a constitutional right to present evidence. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). But a criminal defendant's right to present evidence is limited by the rules of evidence. *Jones*, 168 Wn.2d at 720. Accordingly, refusing to allow a defense expert does not violate the defendant's right to present evidence if the expert testimony is not relevant or if the expert is not qualified under ER 702. *Jones*, 168 Wn.2d at 720; *State v. Aguirre*, 168 Wn.2d 350, 363, 229 P.3d 669 (2010). Reasonably, similar limitations should apply to the right to present expert testimony at a *Sell* hearing.

Here, Lyons represented to the trial court on three separate occasions that he had a qualified medical expert who was able to testify on his behalf. And Lyons informed the trial court of the specific aspects of the State's case that his expert would be able to rebut. On the record before us, Lyons demonstrated that he would be presenting admissible, relevant testimony from a qualified expert. Therefore, Lyons established that he had a procedural due process right to present his expert testimony.

We note that any time a defendant makes a motion to continue, including a motion to continue to obtain an expert, the trial court must exercise its discretion to determine whether granting the motion to continue is appropriate. When exercising its discretion on a motion to continue, the trial court must consider the defendant's due process right to an expert as well as counsel's diligence in investigating and obtaining an expert, the need for orderly procedure, the possible effect of delay on trial, and whether prior continuances were granted. *In re Welfare of N.M.*, 184 Wn. App. 665, 673, 346 P.3d 762 (2014).

We reverse the trial court's involuntary medication order.

SUTTON, J.

We concur:

WORSWICK, P.J.

JOHANSON, J.