IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of: | ) | No. 81128-2-I |
| | ) | |
| B.H., | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | PUBLISHED OPINION |
| | ) | |
| | ) | |

HAZELRIGG, J. — B.H. was ordered committed for a period up to 14 days following revocation of a less restrictive alternative order based on her failure to attend scheduled mental health appointments. B.H. appeals the 14-day involuntary commitment order, arguing that her due process rights were violated based on the lack of a finding of grave disability or harm to self or others. Due process requires such a finding prior to entry of an order of commitment. Because no such finding was made at any point during these proceedings, we find that B.H.'s due process rights were violated and vacate the order of commitment.

FACTS

In late October 2019, the State filed a petition under chapter 71.05 RCW to detain B.H. for 14 days for the purpose of mental health treatment, pursuant to its assertion that she was in "imminent danger because of grave disability." In November 2019, after B.H. orally waived her presence at the hearing on the State's petition, the court entered an agreed order on a less restrictive alternative (LRA)

which imposed a course of outpatient treatment for 90 days in lieu of detention. The LRA required B.H. to attend scheduled mental health appointments and "[r]efrain from acts, attempts, and threats of harm to self, others, and others' property." The LRA did not include a stipulation from B.H. or her counsel that she was gravely disabled or that facts sufficient to support such a finding existed, nor did the court make such a finding.

In January 2020, a hearing was conducted to determine whether B.H. had violated the terms and conditions of the LRA. Dr. Julia Singer, the evaluator for the State, testified at the hearing that B.H. admitted to not attending her meetings for two reasons. First, that B.H. could not find the location of the treatment provider for the appointments and, second, that she did not want to attend the specific facility to which she was assigned for treatment. Singer further testified that B.H. had not stabilized to a sufficient degree to address her paranoia, so the doctor supported revocation of the LRA.

Tarek Sandarusi, a project manager at Kerner-Scott House who had known B.H. for about a year, also testified at the revocation hearing. Sandarusi indicated that he had noticed recent changes in B.H.'s behavior—but that when B.H. was at her baseline, she did not need assistance, followed the rules, and managed her own money and medication. At the conclusion of the revocation hearing, the court found B.H. to have violated the terms of the LRA by failing to attend all appointments as required. The LRA was revoked and B.H. was ordered committed for a period of up to 14 days. B.H. now appeals.

ANALYSIS

As a preliminary matter, the parties agree that while B.H. has long since completed the 14-day commitment ordered by the court, her appeal is not moot. Due to the collateral consequences that can result from a commitment order, we agree with the parties and consider the issue presented.

B.H. argues her due process rights were violated when the trial court revoked the LRA and ordered her committed without finding that she was gravely disabled or a danger to herself or others. We review constitutional due process challenges de novo. State v. Lyons, 199 Wn. App. 235, 240, 399 P.3d 557 (2017). "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). Involuntary commitment for mental health treatment is "'a massive curtailment of liberty.'" In re Det. of LaBelle, 107 Wn.2d 196, 201, 728 P.2d 138 (1986) (quoting Humphrey v. Cady, 405 U.S. 504, 509, 92 S. Ct. 1048, 1052, 31 L. Ed. 2d 394 (1972)). "We have previously recognized the imposition of procedural safeguards on civil commitment statutes in order to protect affected persons against abuses." In re Det. of C.W., 147 Wn.2d 259, 277, 53 P.3d 979 (2002).

An essential due process guarantee is that the State may not confine a mentally ill person for treatment unless it proves, and the trial court finds, that the individual is either dangerous or unable to "live safely in freedom." O'Connor v. Donaldson, 422 U.S. 563, 575, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). This due process requirement exists regardless of whether it is codified by statute. Id. at

573–74. In our state, chapter 71.05 RCW addresses this due process requirement by requiring a finding by the court that the individual at risk of commitment poses "a likelihood of serious harm" or is "gravely disabled." RCW 71.05.240(4)(a).

The parties are in agreement that no finding of grave disability or likelihood of serious harm was made at any point in B.H.'s proceedings. The State argues that this is because the LRA was agreed upon by the parties. Instead of the finding by the court, an agreed LRA could rely on a stipulation that the person subject to the order is gravely disabled or presents a likelihood of serious harm to self or others, or that facts sufficient to support such a finding exist. This one did neither.

The State argues that RCW 71.05.590(4)(d), the statute focused on LRA revocation, does not explicitly require that a finding of grave disability or likelihood of serious harm be made when an LRA is revoked.[1] This is true, but it does not relieve the State or the court of its obligation to comply with due process under both our state and federal constitutions. See In re Det. of Johnson, 179 Wn. App. 579, 587, 322 P.3d 22 (2014); O'Connor, 422 U.S. at 575.

In the absence of a judicial finding or an express stipulation that the individual at risk of commitment poses "a likelihood of serious harm" or is "gravely disabled" at the time of imposition of the LRA, the revocation of the LRA merely returns the parties to the status quo prior to the LRA. That status quo in this case was without any of the necessary findings to warrant commitment.

---

[1] In supplemental briefing, the State relies on State v. Beaver, 184 Wn.2d 321, 358 P.3d 385 (2015) to support its arguments as to due process. However, Beaver considered revocation of an agreed order of conditional release in the context of an acquittal based on a plea of not guilty by reason of insanity. Beaver had stipulated when the agreed order of conditional release was entered that he continued to suffer from mental illness such that he presented a risk to public safety. Id. at 331–39. This is a wholly distinct posture from the case at hand where no such stipulation was made and, as such, has no bearing on the issue before us.

Ordering B.H.'s commitment after revocation of her LRA without any findings as to grave disability or likelihood of harm to self or others at any point in the proceedings was a violation of her due process rights.  See Labelle, 107 Wn.2d at 207.  As such, we vacate her commitment order.

WE CONCUR:

_____

___Chun, J._____          ___Appelwick, J.___