# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 60808-1-II |
| M.N. | |
| | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – MN appeals the superior court's order authorizing involuntary treatment of him with antipsychotic medication.

The Involuntary Treatment Act (ITA), chapter 71.05 RCW, permits a court to order the administration of antipsychotic medication to involuntarily committed persons under certain circumstances. The court must make "specific findings of fact" regarding certain factors, including "the person's desires regarding the proposed treatment." RCW 71.05.217(1)(j)(ii)(C). The court is allowed to make a "substituted judgment" for the person if the court finds that the person is incompetent to make treatment decisions. RCW 71.05.217(1)(j)(ii). Here, the superior court made a substituted judgment that MN would consent to being treated with antipsychotic medication if he was capable of making a rational decision concerning treatment.

MN expressed that two medications that he previously had taken caused adverse side effects. MN argues that the superior court erred by not adequately considering his concerns

about taking medication as required under RCW 71.05.217(1)(j)(ii)(C) and not making a specific finding of fact regarding that factor before making its substituted judgment.

We hold that the superior court's findings of fact regarding MN's desires regarding treatment were sufficient to satisfy RCW 71.05.217(1)(j)(ii)(C). Accordingly, we affirm the superior court's order authorizing involuntary treatment of MN with antipsychotic medication.

FACTS

MN has been involuntarily committed at Western State Hospital (WSH) since 2016. He has been diagnosed with schizoaffective disorder, bipolar type. MN received involuntary treatment for up to 180 days pursuant to an order entered on May 9, 2024.

On June 21, 2024, Dr. Casey Gregoire – a mental health professional at WSH – filed a petition for involuntary treatment of MN with antipsychotic medication. The petition asserted that MN needed treatment with antipsychotic medication, but he refused to consent to such treatment because he did not believe he had a mental illness. The petition stated that when not on medication, MN had a history of verbal and physical aggression with staff members. The petition sought permission to administer four different antipsychotic medications, including Haldol.

At the hearing on the petition, Dr. Gregoire testified that MN had refused to take his medications since May 2024, and that he had been on and off forced medication orders since he was admitted to WSH in 2016. She stated that MN's schizoaffective disorder causes prominent thought disorganization, meaning that much of what he says does not make sense. MN had delusions, frequently changed the name that he would like to be called, referred to himself as "the universe," and became argumentative if he was called by his given name. Rep. of Proc. (RP) at 13. MN often became very agitated, yelling, slamming doors, and intimidating people by

2

getting in their personal space. Dr. Gregoire testified that when MN is medicated, these symptoms are still present and he remains delusional but is more redirectable and less agitated.

When Dr. Gregoire has advised MN of his need for treatment with antipsychotic medications, he has said that he does not need medication because he is not mentally ill. MN previously reported that he experienced "electroshock therapy" as a side effect from the Haldol, one of the medications Dr. Gregorie sought to administer. RP at 15. But this is not a known side effect of Haldol. He also reported breast development from Risperdal which was noted in his records and is a known side effect of the medication. When MN was offered alternatives to these medications, he continued to refuse. Dr. Gregoire did not request that MN be given Risperdal in the petition, but she requested that he restart Haldol, which had been very effective at treating his symptoms in the past.

Dr. Gregoire testified that if antipsychotic medication was administered, MN likely would benefit from reduced psychotic symptoms, including thought disorganization, delusions, and agitation. She also testified that MN has a history of being aggressive toward others, at times requiring restraints or seclusion, which becomes worse the longer he is unmedicated. Dr. Gregoire stated that although MN had not recently been restrained or secluded, she anticipated that he may need to be restrained again soon because his behavior had been escalating over the last several weeks of being unmedicated.

Dr. Gregoire opined that if MN continues to refuse medication, his time at WSH would be extended indefinitely. But if he could become medication-adherent, there is a realistic chance that he could be discharged eventually.

The superior court entered written findings of fact and conclusions of law. The court adopted as a finding a summary of Dr. Gregoire's testimony, although the court did not make an express finding regarding Dr. Gregoire's credibility or reliability.

The superior court found by clear, cogent, and convincing evidence that Dr. Gregoire had a compelling interest in administering antipsychotic medication because without medication MN would suffer a severe deterioration in routine functioning that endangered his health and safety and he likely would be detained for a substantially longer period of time.

The superior court did not make a separate finding regarding MN's desires regarding treatment, but did include the following testimony from Dr. Gregoire in its findings: "Indicates she has tried to talk to [MN] about taking the medications and he said he does not want to take them and he does not have a mental illness. . . . Indicates [MN] said he was experiencing electroshock therapy from the medications which is not a side effect of the medications; continues to say he does not need medications." Clerk's Papers (CP) at 19.

The superior court made the following finding: "[MN] would consent to being treated with antipsychotic medication if [MN] were capable of making a rational decision concerning treatment and this Court is hereby substituting its judgment for that of [MN]." CP at 20. The court authorized Dr. Gregoire and other WSH treatment providers to administer antipsychotic medication as requested in the petition.

MN appeals the superior court's involuntary medication order.

ANALYSIS

A.    LEGAL PRINCIPLES

Under the due process clauses of the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, a person has a liberty interest

in avoiding the unwanted administration of antipsychotic medication. *In re Det. of P.R.*, 18 Wn. App. 2d 633, 643, 492 P.3d 236 (2021). In addition, a person who has been involuntarily committed has a statutory right to refuse antipsychotic medication. RCW 71.05.215(1); RCW 71.05.217(1)(j). But this right is not absolute. RCW 71.05.215(1) states that a person who is involuntarily committed may not refuse medication if "it is determined that the failure to medicate may result in a likelihood of serious harm or substantial deterioration or substantially prolong the length of involuntary commitment and there is no less intrusive course of treatment than medication in the best interest of that person."

RCW 71.05.217(1)(j)(i) states that a court may order the administration of antipsychotic medication if

> the petitioning party proves by clear, cogent, and convincing evidence that [1] there exists a compelling state interest that justifies overriding the patient's lack of consent to the administration of antipsychotic medications . . ., [2] that the proposed treatment is necessary and effective, and [3] that medically acceptable alternative forms of treatment are not available, have not been successful, or are not likely to be effective.

The court is required to "make specific findings of fact concerning: (A) The existence of one or more compelling state interests; (B) the necessity and effectiveness of the treatment; and (C) the person's desires regarding the proposed treatment." RCW 71.05.217(1)(j)(ii).

"If the patient is unable to make a rational and informed decision about consenting to or refusing the proposed treatment, the court shall make a substituted judgment for the patient as if he or she were competent to make such a determination." RCW 71.05.217(1)(j)(ii).

The court's written findings of fact and conclusions of law must be detailed enough to allow for meaningful review. *In re Det. of A.F.*, 20 Wn. App. 2d 115, 123, 498 P.3d 1006 (2021). At a minimum, they must identify the factual basis supporting the court's conclusions. *Id.* The

level of detail required varies with the circumstances of each case, and findings may be adequate even when the necessary details are only implied within the trial court's formal written findings. *Id.*

B.      SUFFICIENCY OF RCW 71.05.217(1)(j)(ii)(C) FINDING

MN argues that the superior court failed to make a specific finding regarding his desires regarding the proposed treatment as required in RCW 71.05.217(1)(j)(ii)(C). Therefore, he argues that the court's substituted judgment finding was inadequate to authorize his involuntarily medication. We disagree.

The superior court did not make a separate finding regarding MN's preference to not receive involuntary treatment. However, the court included as a written finding of fact a summary of Dr. Gregoire's testimony, which included a discussion of MN's preferences. Dr. Gregoire testified that MN told her that he does not want to take the medications and that he did not have a mental illness. Dr. Gregoire also stated that MN told her that he was experiencing "electroshock therapy" after taking medication and that he continued to say that he did not need medication. CP at 19.

It would have been preferable for the superior court to make a separate finding regarding MN's desires regarding treatment rather than simply summarizing Dr. Gregoire's testimony on the issue. However, we conclude that this summary – which was expressly included as a finding of fact – was sufficient to satisfy the specific finding requirement of RCW 71.05.217(1)(j)(ii)(C).

MN argues that the superior court was required to provide a substantive discussion of his concerns about taking the medication and why those concerns were disregarded when making the substituted judgment. But it can be implied from the court's substituted judgment finding that administering the medication was in MN's best interest despite his concerns.

Accordingly, we hold that the superior court did not err when it authorized MN's involuntary treatment with antipsychotic medication.

C.      MEDICAL APPROPRIATENESS

MN also argues that the commissioner violated MN's due process rights by not making a substantive finding regarding "medical appropriateness."  To support this contention, he cites to *Riggins v. Nevada*, 504 U.S. 127, 135, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992); *Sell v. U.S.*, 539 U.S. 166, 181, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003); and *State v. Lyons*, 199 Wn. App. 235, 241, 399 P.3d 557 (2017).

However, these cases involve the involuntary administration of medication for competency restoration purposes so a defendant can stand trial. The issue of whether MN is competent to stand trial is not before us, and therefore the standards articulated in these cases regarding "medical appropriateness" are not applicable here.  Instead, RCW 71.05.217(1)(j)(i) requires that the proposed treatment be "necessary and effective."

We hold that the superior court did not err in failing to make a substantive finding regarding medical appropriateness.

CONCLUSION

We affirm the superior court's order authorizing involuntary treatment of MN with antipsychotic medication.

No. 60808-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

PRICE, J.

CHE, J.