IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No.78154-5-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| DAMIEN ANDREW DANIELS, | |
| Appellant. | FILED: March 25, 2019 |

CHUN, J. — The State charged Damien Daniels with five felonies. Daniels sought Drug Diversion Court (DDC) to address his substance abuse issues, but certain factors rendered him ineligible under the established criteria. During a hearing to address his eligibility, the trial court ruled that RCW 2.30.030 did not authorize it to admit a case to DDC without the prosecutor's consent. We agree with the trial court. With respect to therapeutic courts, the plain language of RCW 2.30.030 requires prosecutor consent in all criminal cases but gives those courts discretion to establish eligibility criteria and to decline to accept cases.

I.
BACKGROUND

The State initially charged Daniels with one count of attempting to elude a pursuing police vehicle, and subsequently amended the information to include second degree burglary, possession of a stolen vehicle, assault in the third degree of a law enforcement officer, and Violation of the Uniform Controlled Substances Act (VUCSA).

To address his substance abuse problems, Daniels sought DDC at King County Superior Court as a means to resolve his criminal case. However, under the Drug Court Eligibility Criteria in the manual for the King County Adult Diversion Court (the Manual), felony assault and attempt to elude do not qualify as crimes eligible for DDC. Daniels's criminal history also included convictions rendering him ineligible for DDC.

Daniels does not dispute his ineligibility. Nevertheless, he wanted admission to DDC. The State objected. Daniels requested a motion hearing to address his eligibility for DDC. As an initial step, Daniels asked the court to resolve whether the court retains discretion under RCW 2.30.030 to admit a defendant to DDC over the prosecutor's objection. The trial court ruled that RCW 2.30.030 does not grant authority to the court to accept a criminal case into DDC if a prosecutor objects.

Daniels requested discretionary review in this court. A commissioner granted review on the grounds that the interpretation and application of RCW 2.30.030 involve a recurring issue warranting an appellate decision.

II.
ANALYSIS

The sole issue in this case involves the interpretation of RCW 2.30.030. We review de novo questions of statutory interpretation. Ass'n of Wash. Spirits & Wine Distribs. v. Liquor Control Bd., 182 Wn.2d 342, 350, 340 P.3d 849 (2015). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give

2

effect to that plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn. 2d 1, 9-10, 43 P.3d 4 (2002). The court must interpret the language in a manner rendering no portion of the statute meaningless or superfluous. Rivard v. State, 168 Wn.2d 775, 783, 231 P.3d 186 (2010).

If a statute remains susceptible to more than one reasonable meaning, we deem it ambiguous and look to principles of statutory construction, legislative history, and relevant case law to discern intent. Cockle v. Dep't of Labor & Indust., 142 Wn.2d 801, 808, 16 P.3d 583 (2001). Simply because one can conceive of differing interpretations does not render a statute ambiguous. Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). For unambiguous statutes, we engage in plain language analysis. Cerrillo, 158 Wn.2d at 201.

In 1999, the legislature first authorized jurisdictions to establish and operate drug courts under RCW 2.28.170. The statute required jurisdictions to "establish minimum requirements for the participation of offenders in the program." RCW 2.28.170(b). It allowed drug courts "to adopt local requirements that are more stringent than the minimum." RCW 2.28.170(b). When forming its DDC, King County relied on this provision to establish the more stringent requirements outlined in the Manual.

In 2015, the Legislature repealed and replaced the original drug court statute with RCW 2.30.030, authorizing courts to establish therapeutic courts to provide treatment or address issues contributing to the conduct leading to arrest.

3

In establishing the new statute the legislature specified, "In criminal cases, the consent of the prosecutor is required. Therapeutic courts retain the discretion to establish processes for eligibility and admission, and therapeutic court judges retain the discretion to decline to accept a particular case into the court." S.B. REP. ON S.B. 5107, 64th Leg., Reg. Sess. (Wash. 2015). The statute subsequently codified this structure as follows:

(1) Every trial and juvenile court in the state of Washington is authorized and encouraged to establish and operate therapeutic courts. Therapeutic courts, in conjunction with the government authority and subject matter experts specific to the focus of the therapeutic court, develop and process cases in ways that depart from traditional judicial processes to allow defendants or respondents the opportunity to obtain treatment services to address particular issues that may have contributed to the conduct that led to their arrest or involvement in the child welfare system in exchange for resolution of the case or charges. In criminal cases, the consent of the prosecutor is required.

(2) While a therapeutic court judge retains the discretion to decline to accept a case into the therapeutic court, and while a therapeutic court retains discretion to establish processes and determine eligibility for admission to the therapeutic court process unique to their community and jurisdiction, the effectiveness and credibility of any therapeutic court will be enhanced when the court implements evidence-based practices, research-based practices, emerging best practices, or promising practices that have been identified and accepted at the state and national levels. Promising practices, emerging best practices, and/or research-based programs are authorized where determined by the court to be appropriate. As practices evolve, the trial court shall regularly assess the effectiveness of its program and the methods by which it implements and adopts new best practices.

RCW 2.30.030(1) (emphasis added).

Daniels contends the language of RCW 2.30.030 grants the trial court ultimate discretion over admission to DDC, with the ability to override a

4

prosecutor's objection. He interprets the requirement of prosecutor consent as applicable only to the general creation of therapeutic courts for criminal cases in a jurisdiction, rather than the approval of individual cases. The State argues the plain language necessitates prosecutor approval of admission to therapeutic courts for criminal cases on a case by case basis. We agree with the State.

RCW 2.30.030(1) opens with general language authorizing and encouraging courts to establish and operate therapeutic courts. In the next sentence, however, the statute focuses on case-specific application: it requires therapeutic courts, governmental authorities, and subject matter experts to develop ways "to allow defendants or respondents the opportunity to obtain treatment services to address particular issues that may have contributed to the conduct that led to their arrest or involvement in the child welfare system in exchange for resolution of the case or charges." RCW 2.30.030(1). The third sentence mandates prosecutor consent in criminal cases. This indicates the legislature intended for prosecutors to consent to admission of criminal cases to therapeutic courts on a case by case basis.

Daniels claims ambiguity because RCW 2.30.030(1) requires prosecutor consent but RCW 2.30.030(2) invests therapeutic court judges with discretion to decline to accept cases and to define process and eligibility criteria for therapeutic courts. RCW 2.30.030(2). Contrary to Daniels's claim of ambiguity, one can easily harmonize these provisions.

The plain language of the statute reflects that both prosecutors and therapeutic courts have roles in admission to DDC. The therapeutic court has

5

the discretion to establish general process and eligibility criteria against which the prosecutor evaluates individual criminal cases and consents to admission. The therapeutic court then has discretion to decline a case otherwise approved by the prosecutor. Unlike Daniels's construction of the statute, which effectively renders the prosecutor consent language meaningless except as to the general approval of therapeutic courts, this interpretation gives effect to both provisions. The interpretation provides the prosecutor's required consent while giving the requisite discretion to the courts.

Furthermore, this interpretation ensures other provisions of the statute do not become superfluous. For example, RCW 2.30.030(8) specifies, "Nothing in this section prohibits a district or municipal court from ordering treatment or other conditions of sentence or probation following a conviction, without the consent of either the prosecutor or defendant." This provision clearly serves to mitigate against the risk of misinterpreting the statute to require prosecutor consent for treatment outside the therapeutic court context. The legislature would not have included Subsection (8) to differentiate these treatment options if prosecutor consent did not remain mandatory for admission to therapeutic courts in all criminal cases.

While the courts have ultimate discretion to establish criteria for admission and to decline to accept a case, RCW 2.30.030 requires initial consent by the prosecutor for each case. This construction of the statute tracks the plain language and harmonizes and effectuates the various provisions. The trial court

did not err in ruling that it cannot accept a defendant into therapeutic court over the objection of the prosecutor.

Affirmed.

_Chun, C.J._

WE CONCUR:

_Smith, J._

_Verellen, J._