**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55885-8-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| DERRIC DANIEL HARRISON, | |
| Appellant. | |

MAXA, J. – Derric Harrison appeals his termination from the Kitsap County Adult Drug Court Program (ADCP) and in the alternative, the sufficiency of the evidence for his third degree theft conviction as charged in count II.

We hold that the trial court's termination of Harrison from drug court violated his procedural due process rights. Because the issue may arise on remand, we also hold that Harrison waived his right to appeal the sufficiency of evidence for any convictions entered after termination from the ADCP. Accordingly, we reverse Harrison's termination from the ADCP, vacate his convictions, and remand for the trial court to conduct proceedings regarding Harrison's termination from drug court that comply with due process.

No. 55885-8-II

FACTS

*Background*

Based on an incident in October 2019, Harrison was charged with two counts of third degree theft, third degree assault, unlawful possession of a controlled substance, second degree driving with a suspended or revoked license, and bail jumping.

Count II was for third degree theft at a Chevron gas station. In the police report, the probable cause statement regarding count II stated, "CPL Nelson went inside of Chevron and spoke with the store clerk. CPL Nelson advised there was probable cause for theft degree [sic] against Harrison." Clerk's Papers (CP) at 39.

*Drug Court Application*

Harrison petitioned for participation in the ADCP, which included stipulations and waivers. Harrison admitted that he was guilty of the underlying offenses and that his drug addiction contributed to the conduct that led to his charges. But he stated that he understood that if he completed the drug court program, the charges against him would be dismissed. Harrison also stated that he understood that if he was terminated from drug court, the trial court would decide if he was guilty of the charges based upon the facts in the police reports. And he stipulated that the facts in the police reports were sufficient for a trier of fact to find him guilty of the charges filed against him.

Harrison further stated,

> I understand my participation in the Drug Court Program requires that I waive very important rights. I have fully discussed my rights with my Defense Attorney, and I am satisfied that I understand how the Program will affect my rights. The decision to waive my rights and enter the Program is mine alone and made of my own free will.

2

No. 55885-8-II

CP at 24-25. The petition then listed on pages 2 and 3, and Harrison initialed, a number of constitutional rights that he was "knowingly, voluntarily, and intelligently" waiving. CP at 25. One of the constitutional rights Harrison waived was "[t]he right to challenge on appeal the sufficiency of facts contained in the written reports admitted as evidence and used to convict me." CP at 26.

Harrison agreed to comply with a number of program requirements, including that he complete the entire program. He agreed to the following,

> I understand that if at any time it is determined by the Team that I am in violation of any term or condition of this stipulation, compliance directive, or my treatment plan, my release is subject to being revoked by the Drug Court Compliance Specialist, a designated police agency official, or the Court.

CP at 28.

At the end of the petition, Harrison stated,

> I have reviewed this document thoroughly and I am entering into this agreement freely and voluntarily. I understand that I will be expected to abide by all the program rules in order to stay in compliance. I have had enough time to discuss the program requirements with my attorney and I am choosing to resolve my case by entering drug court.

CP at 30. The petition was signed by Harrison, his attorney, and the prosecutor.

On June 10, 2020, the trial court discussed the petition and the stipulations and waivers therein with Harrison. Harrison stated that he understood that he was waiving the constitutional rights listed in the petition. The court and Harrison had the following colloquy,

> THE COURT: . . . So let's talk first about the constitutional rights listed on page 2 and 3.
>
> Did you review those rights with Ms. Stokes? I see your initials there.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Any questions about those rights.

3

No. 55885-8-II

THE DEFENDANT: No.

THE COURT: And you understand that by coming into this program today you're waiving those rights?

THE DEFENDANT: Yes.

Report of Proceedings (RP) (June 10, 2020) at 8.

The trial court specifically referenced the waiver of the right to a speedy jury trial and the fact that if Harrison was terminated from the program, the court would decide his guilt based on the police reports. The court confirmed that the decision to stipulate to this procedure was done knowingly, intelligently, and voluntarily. The court did not specifically mention the waiver of the right to appeal.

The trial court then signed the drug court petition, finding as follows:

The foregoing certificate was reviewed by the Defendant in open court in the presence of the Defendant's lawyer and the undersigned Judge. The Defendant asserted that he or she had previously read the certificate. I find the Defendant's decision to submit the above-entitled case on stipulation of facts to be knowingly, intelligently and voluntarily made. The Defendant understands the charge and the consequences of submitting the case on stipulated facts.

CP at 31.

*Drug Court Violations*

After entering the drug court program, Harrison committed numerous violations of program requirements over the next several months. These violations included a missed urinalysis (UA); missed meetings; missing a court date and being late for curfew; being unprepared for group sessions; unauthorized overnight visits; a missed treatment appointment for which the court imposed five day a week house arrest; house arrest violations for which the court imposed full house arrest; being two hours late for curfew for which the court returned him to full house arrest after previously switching him to GPS; a missed UA and missed court date, for

4

which the court imposed four days in jail; being unprepared for a group meeting; a missed group meeting; a missed UA; a positive UA; and failure to prepare for a group meeting, for which the court revoked his release. Harrison explained the circumstances leading up to each violation and accepted the sanctions.

On February 25, 2021, the trial court stated that it was giving Harrison "a final chance" by releasing him for inpatient treatment once a bed was available.

On March 25, Harrison executed an amended petition for the ADCP because of an amended information. The amended petition essentially was identical to the first petition. In the amended petition, Harrison again waived his right to appeal his convictions based on sufficiency of the evidence used to convict him. The trial court had a brief colloquy with Harrison regarding the terms of the amended petition. The court noted Harrison's waiver of constitutional rights and confirmed that he had no questions about them, but the court did not expressly mention waiver of the right to appeal. Harrison then was released to enter an inpatient treatment program.

But in April, Harrison had issues with inpatient treatment and decided to leave his inpatient treatment program. The trial court again revoked his release. On April 15, the trial court told Harrison: "[A]fter some discussion, it was the consensus of the team that we're going to move forward with termination. I told you when you went to this inpatient treatment that this was kind of a final opportunity. And you didn't take advantage of it." RP (Apr. 15, 2021) at 3. However, the court did not explain the specific reason why Harrison was being terminated.

The trial court subsequently scheduled a termination hearing for May 10. The court did not explain that Harrison had the right to challenge his termination. The State did not file a motion for termination before the May 10 hearing.

5

No. 55885-8-II

On May 10, the trial court proceeded with Harrison's termination from the ADCP. There was no discussion, and neither the trial court nor the prosecutor stated the specific reasons why Harrison was being terminated. Instead, the prosecutor simply handed the court a motion and order for termination. The court stated that it was signing the order because it was the team's determination that they move forward with termination. The signed order contains no findings or discussion of the reasons for termination, stating only that the termination was because Harrison "failed to comply with the conditions of Drug Court participation." CP at 74. Harrison did not stipulate to being terminated from the ACDP, but he also did not object to being terminated or make any argument that he should be allowed to remain in the program.

The trial court then proceeded to review the police reports, and found Harrison guilty of all charges. The court advised Harrison that he had "the right to appeal a determination of guilt after a trial. And what we just did is a stipulated facts trial." RP at 169. The court entered findings of fact and conclusions of law. The only finding relating to count II, third degree theft, was that "officers arrived on scene and determined that there was probable cause to arrest the defendant for theft for stealing from the Chevron." CP at 76.

Harrison appeals his termination from the ADCP and his third degree theft conviction as charged in count II.

## ANALYSIS

A.    TERMINATION FROM DRUG COURT

Harrison argues that his termination from the ADCP violated his due process rights because the State did not give him adequate notice of the grounds for termination, the trial court did not require the State to prove his violations by a preponderance of the evidence, and the trial

6

No. 55885-8-II

court did not enter findings stating the alleged violations or that the violations in fact occurred. We agree.

1.    Legal Principles

RCW 2.30.030(1) authorizes Washington trial courts to establish and operate therapeutic courts.[1]  These courts "process cases in ways that depart from traditional judicial processes to allow defendants or respondents the opportunity to obtain treatment services to address particular issues that may have contributed to the conduct that led to their arrest . . . in exchange for resolution of the case or charges."  RCW 2.30.030(1).

Under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, individuals cannot be deprived of "life, liberty, or property, without due process of law."  Procedural due process requires that an individual receive "adequate notice of the deprivation [of a protected interest] and a meaningful opportunity to be heard."  *State v. Beaver*, 184 Wn.2d 321, 336, 358 P.3d 385 (2015).  Due process guarantees apply in drug court revocation proceedings.  *See State v. Cassill-Skilton*, 122 Wn. App. 652, 653, 94 P.3d 407 (2004).

In *State v. Marino*, the Supreme Court addressed the due process requirements for termination of a pretrial diversion agreement.  100 Wn.2d 719, 720, 674 P.2d 171 (1984).  The court first noted that the parties assumed that "due process requires a hearing before a diversion agreement can be terminated."  *Id.* at 723.  The court then held that the "appellant is entitled to have factual disputes resolved by a neutral fact finder.  This includes an independent

---

[1] Former RCW 2.28.170 (2013) gave jurisdictions the opportunity to establish and operate drug courts in order to reduce recidivism and substance abuse.  In 2015, the legislature repealed former RCW 2.28.170 and replaced it with RCW 2.30.030.  *State v. Daniels*, 8 Wn. App. 2d 160, 163, 437 P.3d 723 (2019).

7

No. 55885-8-II

determination that the deferred prosecution agreement was violated, by a preponderance of the evidence with the burden of proof on the State." *Id.* at 725. The court emphasized that "the trial court needs to clearly state the evidence upon which the court relied," either orally or in writing. *Id.* at 727.

The facts in *Marino* were that the State terminated a diversion agreement and the defendant moved to set aside the termination. *Id.* at 721. The trial court held a full evidentiary hearing – including witness testimony – to determine whether the diversion agreement had been violated. *Id.* at 721, 726. The trial court concluded that there were sufficient grounds for termination but made no factual findings and did not state the evidentiary grounds for its decision. *Id.* at 726. Nevertheless, the Supreme Court decided that due process was not violated because the uncontroverted evidence provided an ample basis for finding a violation by a preponderance of the evidence. *Id.* at 726-27.

In *Cassill-Skilton*, this court held that the due process requirements for termination of a diversion agreement stated in *Marino* were controlling authority with regard to termination of a defendant from drug court. 122 Wn. App. at 656, 658. The court quoted the statement in *Marino* that a defendant was entitled to " 'an independent determination that the deferred prosecution agreement was violated, by a preponderance of the evidence with the burden of proof on the State.' " *Id.* at 656 (quoting *Marino*, 100 Wn.2d at 725). The court suggested that the trial court was required to conduct a hearing, after notice, in which the defendant is entitled to present evidence. *Id.* at 658. And the court quoted the statement in *Marino* that " 'the trial court needs to clearly state the evidence upon which the court relied.' " *Id.* (quoting *Marino*, 100 Wn.2d at 727).

8

No. 55885-8-II

The facts in *Cassill-Skilton* were that the State wanted the defendant terminated from drug court because she had committed a new felony. 122 Wn. App. at 654. The defendant's treatment team strongly recommended termination. *Id.* The trial court subsequently terminated the defendant from drug court, apparently without a hearing. *Id.* at 655. This court held that there was a clear due process violation because "there is no record to show the basis of termination, any opportunity for a hearing on the alleged violations, nor any findings to show what evidence the court relied on in finding an agreement violation." *Id.* at 658. A concurring opinion also noted that the defendant was not informed "that she had a right to contest both the termination and the alleged violations." *Id.* at 660 (Van Deren, J., concurring).

    2.   Analysis

We recognize that "[a]dult drug courts are philosophically, functionally, and intentionally different from ordinary criminal courts." *State v. Sykes*, 182 Wn.2d 168, 171, 339 P.3d 972 (2014). Drug court is designed to be collaborative rather than adversarial, and that collaboration differentiates drug court from ordinary criminal proceedings. *See id.* at 177-78. In fact, it is because drug courts operate outside of the traditional adversarial process that they have been more successful at treating addiction and related criminal behavior than conventional justice system interventions for some offenders. *Overview of Drug Courts*, NAT'L INST. OF JUST. (July 22, 2020), https://nij.ojp.gov/topics/articles/overview-drug-courts.

Accordingly, we must keep in mind these fundamental differences and view their practices with flexibility and at times, tolerance for less formality. Nevertheless, drug court participants are entitled to at least some due process protections. *See Cassill-Skilton*, 122 Wn. App. at 656-58.

No. 55885-8-II

Here, the procedure for terminating Harrison from the ADCP was deficient in four ways. First, neither the trial court nor the prosecutor ever informed Harrison before or during the May 10 hearing of the specific reasons why he was being terminated. The court provided no explanation when it told Harrison that the ADCP team had decided to terminate him from drug court or before signing the termination order. And the State's "motion" did not identify the alleged violations of the drug court agreement that supported termination. We may be able to surmise that the reason for the termination was that Harrison left his inpatient treatment program. But a defendant should not have to guess why he is being terminated. At the very least, due process requires adequate notice of the reasons for the termination of a defendant from drug court.

Second, Harrison never was informed that he had the right to contest the termination or the alleged violations of the drug court agreement that supported termination, or that he had the right to an evidentiary hearing. The trial court suggested that the decision of the ADCP team was final and gave no indication that Harrison could challenge that decision. Before signing the termination order, the court did not even ask Harrison whether he wanted to be heard regarding termination. We agree with the concurring opinion in *Cassill-Skilton* that due process requires that the trial court inform the defendant of the "right to contest both the termination and the alleged violations." 122 Wn. App. at 660 (Van Deren, J., concurring).

Third, the trial court did not state at the May 10 hearing that it had determined that Harrison had committed violations of the drug court agreement by a preponderance of the evidence with the burden of proof on the State. The courts in *Marino* and *Cassill-Skilton* expressly held that a defendant is entitled to such a determination. *Marino*, 100 Wn.2d at 725; *Cassill-Skilton*, 122 Wn. App. at 656.

10

No. 55885-8-II

Fourth, the trial court made no written or oral findings clearly stating the evidence on which it relied in terminating Harrison from drug court. Again, the courts in *Marino* and *Cassill-Skilton* expressly emphasized this requirement. *Marino*, 100 Wn.2d at 727; *Cassill-Skilton*, 122 Wn. App. at 658.

The State suggests that as in *Marino*, we can determine that there was no due process violation even without a statement of the evidentiary basis for termination because there is uncontroverted evidence in the record that Harrison violated the drug court agreement. *See* 100 Wn.2d at 726-27. But the trial court in *Marino* held a full evidentiary hearing and the trial court expressly found that it was clear from the evidence that there were reasonable grounds for termination. *Id.* at 721, 726. In contrast, here there was no evidentiary hearing and we do not know why the trial court decided to terminate Harrison from drug court.

Our case is more similar to *Cassill-Skilton*, where this court found a clear due process violation when the trial court summarily ordered termination because "there is no record to show the basis of termination, any opportunity for a hearing on the alleged violations, nor any findings to show what evidence the court relied on in finding an agreement violation." 122 Wn. App. at 658. The same procedural deficiencies are present here.

Accordingly, we hold that Harrison's termination from the ADCP violated his due process rights, and we reverse the termination order and vacate the subsequent convictions.[2]

B.      SUFFICIENCY OF EVIDENCE FOR THIRD DEGREE THEFT

In the alternative, Harrison argues that the evidence in the complaint was insufficient to convict for third degree theft as charged in count II. We address this issue because it may arise

---

[2] It could be argued that under the facts of this case, the constitutional error was harmless. However, the State does not make this argument.

No. 55885-8-II

on remand. The State concedes that the evidence was insufficient but argues that Harrison waived his right to appeal based on the sufficiency of the evidence. We agree with the State.

1. Stipulation Regarding Sufficiency

Initially, the State suggests that Harrison is bound by his stipulation in the drug court petition that the evidence was sufficient to convict him. But the sufficiency of evidence supporting a conviction is an issue of law, and neither the trial court nor an appellate court is bound by a stipulation to the sufficiency of evidence. *State v. Drum*, 168 Wn.2d 23, 33, 225 P.3d 237 (2010). "By entering a drug court contract, a defendant is not giving up his right to an independent finding of guilt beyond a reasonable doubt. A trial court still has the authority to find the defendant not guilty if it determines that the stipulated evidence does not establish all elements of the crime beyond a reasonable doubt." *Id.* at 34.

2. Waiver of Right to Appeal

The State concedes that there was insufficient evidence in the police report to convict Harrison of count II. But the State argues that Harrison waived his right to appeal based on sufficiency of the evidence. We agree.

Article I, section 22 of the Washington Constitution guarantees criminal defendants "the right to appeal in all cases." However, this right to appeal can be waived just like other constitutional rights. *State v. Perkins*, 108 Wn.2d 212, 217, 737 P.2d 250 (1987). A defendant may waive the right to appeal if it is done "intelligently and with a full understanding of the consequences." *State v. Neff*, 163 Wn.2d 453, 459, 181 P.3d 819 (2008). The burden is on the State to prove a defendant understood the right to appeal and the effect of the waiver. *Id.* A strong presumption that a waiver is voluntary is created when a defendant signs a waiver

12

No. 55885-8-II

statement and admits to understanding it. *Id.* And there is "a strong public interest in enforcing the terms of plea agreements voluntarily entered into by the parties." *Perkins*, 108 Wn.2d at 216.

Here, Harrison's petition for drug court included an express waiver of several constitutional rights, including "[t]he right to challenge on appeal the sufficiency of facts contained in the written reports admitted as evidence and used to convict me." CP at 26. Harrison initialed next to each listed right and expressly stated that he "knowingly, voluntarily, and intelligently" waived those rights. CP at 25. He also confirmed that he had discussed these rights with defense counsel, that he understood how the ADCP would affect his rights, and that the decision to waive the rights was made of his own free will. And above his signature Harrison stated that he had reviewed the document thoroughly and entered into the agreement "freely and voluntarily." CP at 30.

Defense counsel also stated that he had fully advised Harrison regarding all the terms and conditions of the ADCP agreement, that he had no reason to believe that Harrison did not understand the agreement, and that Harrison entered into the agreement out of his own free will.

The trial court went over the stipulation and waiver with Harrison. The court expressly referenced the waiver of constitutional rights on pages 2 and 3 of the petition, which included the waiver of the right to appeal the sufficiency of the evidence. The court confirmed that Harrison (1) had reviewed the rights with defense counsel, (2) had no questions about the rights, and (3) understood that by coming into the ADCP he was waiving those rights.

The trial court did not expressly ask Harrison about his waiver of the right to appeal. However, we conclude that the court's colloquy and Harrison's express waiver in the drug court petition are sufficient for us to conclude that Harrison's waiver was knowing, intelligent, and voluntary.

13

No. 55885-8-II

Harrison notes that after finding Harrison guilty of all charges, the trial court advised Harrison that he had the right to appeal. The trial court's statement was correct as a general proposition. WASH. CONST. art. I, § 22. But this statement did not somehow extinguish Harrison's express waiver of his right to appeal.

Accordingly, we conclude that Harrison waived his right to appeal the sufficiency of the evidence for his third degree theft conviction as charged in count II.

CONCLUSION

We reverse Harrison's termination from the ADCP, vacate his convictions, and remand for the trial court to conduct proceedings regarding Harrison's termination from drug court that comply with due process.

_____
MAXA, J.


We concur:

_____
WORSWICK, P.J.

_____
PRICE, J.

14