IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85791-6-1 |
| Appellant, | |
| v. | DIVISION ONE |
| KAREN KATHLEEN PETERSON, | PUBLISHED OPINION |
| Respondent. | |

HAZELRIGG, C.J. — The State of Washington appeals the trial court's grant of Karen Peterson's CrR 7.8 motion for relief pursuant to our Supreme Court's opinion in *State v. Blake*.[1]  This case presents an issue of first impression for this court as to whether a drug court participation fee can be reimbursed and a dismissed charge vacated under CrR 7.8 and *Blake*.  Peterson seeks dismissal of the State's appeal due to procedural defects.  Because the appeal is properly raised, we reach the merits and conclude that the trial court lacked authority to retain and grant the motion.  Accordingly, we reverse.

FACTS

In 2015, the State charged Karen Peterson with one count of possession of a controlled substance, methamphetamine, under former RCW 69.50.4013 (2015), Washington's version of the Uniform Controlled Substance Act.  Allegations predicated on a violation of the Uniform Controlled Substance Act were commonly

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

referred to as "VUCSA" charges by criminal practitioners and trial courts. Peterson entered the Snohomish County Superior Court's therapeutic "Adult Drug Treatment Court" program, also referred to as "drug court," and paid a $900 participation fee, among other conditions. The State agreed to dismiss the pending VUCSA charge with prejudice upon Peterson's successful completion of the program. In 2017, Peterson graduated from the program, and the State moved to dismiss the charge, which the court granted.

In 2021, our Supreme Court held in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021) that former RCW 69.50.4013 (2017), the state's strict liability drug possession statute, was unconstitutional. On July 11, 2023, in light of the *Blake* decision, Peterson moved under CrR 7.8 to vacate her dismissed VUCSA charge and obtain a refund of the drug court participation fees. She argued in her motion that, pursuant to *Blake*, the State lacked authority to charge her with possession of a controlled substance in 2015. Because the charge was void, she averred, vacatur was required under the plain language of *Blake* when sought.

Peterson's motion acknowledged that she sought relief from an order of dismissal and not a judgment and sentence, but nonetheless argued that she was entitled to relief under CrR 7.8(b), and that her motion was timely under RCW 10.73.100(6). She further raised a due process argument that relied on *Nelson v. Colorado*[2] and *State v. Curtis*,[3] despite her concession that those cases involved

---

[2] 581 U.S. 128, 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017).
[3] No. 36803-3-III (Wash. Ct. App. Nov. 16, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/368033_unp.pdf. *State v. Curtis* is unpublished. Under GR 14.1(c), we may discuss unpublished opinions as necessary for a well-reasoned opinion. It is included here only as a procedural fact regarding Peterson's motion.

refunds of legal financial obligations (LFOs) after the criminal convictions were overturned.

Peterson claimed that she had an interest in the return of the fees she paid to a program that she entered only because she was charged with a crime based on an unconstitutional statute. Following *Blake*, she asserted, drug court fees were an erroneous deprivation of property that should be returned with nothing more required than a simple request for reimbursement. She further contended that the State lacked a legitimate interest in retaining fees tied to participation in a program necessitated by an unconstitutional statute.

On July 21, the State filed its written opposition to Peterson's motion, arguing that vacating a dismissed charge was not a remedy available under CrR 7.8 or any other legal mechanism. It maintained that Peterson voluntarily entered into the drug court agreement with the State and such agreements fell outside the purview of CrR 7.8. The State further argued that due process claims under *Nelson* require a conviction and, since Peterson was never convicted, her due process arguments did not apply. While the State conceded that pursuant to *Civil Survival Project v. State*,[4] CrR 7.8 is the proper and only avenue to pursue a refund of LFOs paid on *Blake* cases, it asserted that the drug court fee here was not paid pursuant to a conviction and, thus, did not constitute an LFO subject to CrR 7.8. Relying on *Cox v. O'Brien*, 150 Wn. App. 24, 36-37, 206 P.3d 682 (2009), the State further contended that the motion should be dismissed and refiled as a civil claim of unjust enrichment because Peterson's claim is rooted in equity.

---

[4] 24 Wn. App. 2d 564, 520 P.3d 1066 (2022), *review denied*, 2 Wn.3d 1011 (2023).

The State next argued that since Peterson cannot make a substantial showing that she was entitled to the remedy of "vacating" a charge, her motion should be transferred to the Court of Appeals as a personal restraint petition (PRP) because the remedy, dismissal of the criminal charge upon successful completion of a therapeutic alternative, had already been granted. The State averred that Peterson's claim in this matter is the sort that is evaluated and resolved by a review of documentary record against the relevant law. It claimed that there were no issues presented that would require a credibility determination, so she did not require a factual hearing.

Peterson filed her reply on July 28, and again asserted that the plain language of CrR 7.8 does not limit relief available under that rule to only those with convictions, but rather it expressly states that "the court may relieve a party from a final judgment, order, or proceeding." She also averred that she met her burden under CrR 7.8(c) because her participation in drug court is now invalidated due to *Blake*.

On August 2, the trial court heard argument from the parties, particularly as to the various procedural issues raised.[5] It then granted Peterson's motion and entered the following findings and rulings:

> 1. The defendant's motion is properly raised under CrR 7.8 and is hereby granted.
> 2. The defendant's motion shall not be transferred to the Court of Appeals as a Personal Restraint Petition because the defendant's

---

[5] Peterson's attorney in the trial court on this matter also represented two other similarly situated Snohomish County drug court graduates and all of their motions were heard in the same week, though the other two cases were heard together by another judge on a different docket. The State appealed from all three orders, which were nearly identical as they were apparently drafted by defense counsel, and presented similar arguments in each case. The companion cases are *State v. Fjerstad*, No. 85790-8-I and *State v. Hunter*, No. 85792-4-I.

motion is not time barred by RCW 10.73.090, and she has made a substantial showing that she is entitled to relief.

3. The charge of POSSESSION OF A CONTROLLED SUBSTANCE contained in the Information filed on August 18, 2015, against the above-named defendant, is constitutionally defective pursuant to CrR 7.8(2) [sic] and *State v. Blake* and is hereby vacated;

4. Due process requires that Ms. Peterson be refunded the $900 Drug Court fee previously paid pursuant to the vacated charge. The State of Washington shall determine the method of any refund herein with all deliberate speed.

4. [sic] The Clerk of the court shall immediately transmit a copy of this order vacating the charge to the Washington State Patrol Identification Section and to the local police agency, if any, which holds criminal history information for the person who is the subject of the charge. The Washington State Patrol and any such local police agency shall immediately update their records to reflect the vacation of the charge, and shall transmit the order vacating the charge to the Federal Bureau of Investigation as required by RCW 9.96.060(7).

The State timely appealed.

ANALYSIS

I.     Appealability

As a threshold matter, Peterson contends that the State's appeal must be dismissed on any of several applicable procedural grounds. She specifically avers that the State cannot appeal the trial court's order granting a motion to vacate a criminal charge and reimburse drug court fees under RAP 2.2(b).[6] The State, in

---

[6] Peterson additionally urges this panel to dismiss the appeal as moot because the State has already refunded her drug court fee, leaving no effective relief available. The State concedes in its opening and reply briefs, as well as during oral argument before this court, that Peterson's fee was refunded, and further asserted that it will not seek to recapture those funds, so the relief requested as to that issue is moot. Wash. Ct. of Appeals oral arg., *State v. Peterson*, No. 85791-6-I (Jan. 15, 2025), at 22 min., 53 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025011256/.

However, while the refund may be Peterson's primary goal, or the perceived restraint or injury from the 2015 VUCSA, the case remains on her criminal history, though it presumably carries the designation for a dismissed case. The distinction between dismissed and vacated criminal charges is analyzed in Part II.A.1 *infra*. Peterson's case is not moot because relief is still available in the form of vacatur of the 2015 VUCSA charge from her criminal history.

But, even if a case becomes moot, this court has the discretion to decide an appeal if the question is one of continuing and substantial public interest. *State v. Beaver*, 184 Wn.2d 321, 330,

contrast, asserts in its opening brief that RAP 2.2(b)(3) permits an appeal of the order and later, in its reply brief and at oral argument before this court, relies on RAP 2.2(b)(1).[7]

RAP 2.2(b)(1) allows the State to appeal a final decision, which is a "decision that in effect abates, discontinues, or determines the case other than by a judgment or verdict of not guilty, including but not limited to a decision setting aside, quashing, or dismissing an indictment or information, or a decision granting a motion to dismiss under CrR 8.3(c)."

Peterson avers that this case was disposed in 2017 when the State moved for dismissal with prejudice, and the trial court granted that motion. She contends that the trial court's order does not abate, discontinue, or determine a case that has already been resolved. In its reply brief, the State counters that the trial court order determined the case by vacating a criminal charge that had been dismissed during its pendency, which it argues is sufficiently analogous to setting aside, quashing, or dismissing an indictment or information. We agree with the State.

"RAP 2.2(b)(1) broadly permits the State to appeal superior court decisions resolving the disposition of a case and bars the State from appealing only a 'judgment or verdict of not guilty.'" *State v. Tracer*, 173 Wn.2d 708, 715, 272 P.3d 199 (2012). The trial court order at issue here fits within the scope of a final

---

358 P.3d 385 (2015). Many individuals who entered drug court solely on VUCSA charges brought under the prior unconstitutional statute may also seek relief under *Blake*, as illustrated by the two companion cases identified in note 4 *supra*. This sufficiently establishes that the issue is likely to recur and involves a substantial public interest and is therefore a separate basis on which to conclude that it is not moot.

[7] Wash. Ct. of Appeals oral arg., *supra*, at 10 min., 20 sec.

decision under RAP 2.2(b)(1). Accordingly, the August 9 order that granted Peterson's requested relief is appealable by the State.[8]

## II. Application of CrR 7.8 to Dismissed Charge

The relief Peterson sought in the trial court aligns with the rationale articulated by our Supreme Court in *Blake*. The *Blake* court determined that "[a]ttaching the harsh penalties of felony conviction, lengthy imprisonment, stigma, and the many collateral consequences that accompany every felony drug conviction to entirely innocent and passive conduct exceeds the legislature's powers." 197 Wn.2d 174. It expressly held that former RCW 69.50.4013(1) (2017) "violate[d] the due process clauses of the state and federal constitutions and [wa]s void" from its inception. *Id*. at 195. In deciding that case, our state's highest court did not foreclose relief for petitioners who entered drug court under the shadow of prosecution pursuant to the same unconstitutional statute.

By invalidating the simple possession statute, our Supreme Court effectively restored defendants accused and later convicted of passive nonconduct, by guilty plea or trial, to their original legal status. The same logic should apply to those who entered drug court or other therapeutic court options under the threat of prosecution for a crime under an unconstitutional statute, particularly those who met the stringent conditions of those programs and earned dismissals through compliance with treatment, fee, and conduct requirements. The court in *Blake* did not distinguish between individuals who were charged and

---

[8] Because we have concluded that the State's appeal may proceed under RAP 2.2(b)(1), we need not reach its argument as to appealability pursuant to RAP 2.2(b)(3).

convicted and those who sought resolution of their cases through programs like drug court because that question was not presented there. But, if the State never had the authority to charge, convict, or punish individuals under its simple possession statute, then it also lacked the authority to force Peterson's choice about participation in drug court under threat of prosecution.

The sole question before us, however, is whether the manner by which the trial court granted Peterson's motion for *Blake* relief was proper, given the facts of her criminal case. The State avers that this court should reverse because the trial court failed to comply with the requirements of CrR 7.8 when it retained and ruled on Peterson's motion for relief from a dismissed criminal charge. The State is correct.

A.     Limits on CrR 7.8 Relief

We review a superior court's decision on a CrR 7.8 motion for abuse of discretion. *State v. Enriquez-Martinez*, 198 Wn.2d 98, 101, 492 P.3d 162 (2021). "Discretion may be abused if it is exercised on untenable grounds or for untenable reasons, such as a misunderstanding of the law." *Id*. However, the interpretation of a court rule presents a question of law that we review de novo. *State v. Stump*, 185 Wn.2d 454, 458, 374 P.3d 89 (2016).

Here, Peterson moved under CrR 7.8(b) to vacate her dismissed felony charge of possession of a controlled substance and sought a refund of her mandatory drug court participation fee. The State contends that there is no such remedy available, an order vacating a dismissed criminal charge, regardless of whether it was brought under CrR 7.8 or by some other mechanism.

### 1. Vacatur of a Dismissed Charge

CrR 7.8 allows a party in a criminal case to seek "'relief from [a] judgment or order.'" *State v. Waller*, 197 Wn.2d 218, 226, 481 P.3d 515 (2021) (alteration in original). The rule does not define "relief" or specify what forms of relief are available. *Id*. It mentions "vacation" only once, in the heading of subsection (c), "'Procedure on Vacation of Judgment.'" *Id*. Our Supreme Court has clarified that "'[u]nder CrR 7.8(b), a *judgment* may be modified or vacated.'" *Id*. (alteration in original) (emphasis added) (quoting *State v. Hardesty*, 129 Wn.2d 303, 315, 915 P.2d 1080 (1996)).

Peterson asserts that because the text of CrR 7.8(b), immediately before its enumerated list, includes the word "order," the plain language of the rule does not restrict relief only to convictions, and her dismissal order, which resolved all issues in her case, qualifies as a final order subject to vacatur. In reply, the State reiterates its position that CrR 7.8 does not permit relief from dismissed charges and applies only to final judgments involving convictions.[9] It further counters that the structure of the Snohomish County Superior Court Local Criminal Rules locates its procedural additions to CrR 7.8 in a section entitled "Procedures Following Conviction" which, it avers, implies that the rule applies only to convictions. Here, the trial court in 2017 expressly directed that "the charge of POSSESSION OF A CONTROLLED SUBSTANCE, contained in the Information filed the 18th day of August, 2015, against the defendant KAREN KATHLEEN PETERSON be and the

---

[9] It is noteworthy that the State argues in briefing, for purposes of appealability under RAP 2.2, that the order on the CrR 7.8 motion was a judgment, but the underlying 2017 dismissal order was not.

same is hereby dismissed" and that "the appearance bond or bail, if such has been required in this cause, and if not previously forfeited, is exonerated, and the Clerk of this Court is authorized to release such to the appropriate person or persons." The trial court's order that dismissed the pending VUCSA charge and exonerated any bail that may have been required in the case did not constitute a judgment because it imposed no sentence and resolved no new substantive issues. *State v. Hecht*, 2 Wn. App. 2d 359, 364, 409 P.3d 1146 (2018). A judgment and a dismissal order are not legally equivalent and Peterson's 2017 drug court dismissal order could not have been vacated under CrR 7.8(b).[10] *Id.*

Additionally, RCW 9.94A.640(1) limits vacatur to cases where a conviction exists: "Every offender who has been discharged under RCW 9.94A.637 may apply to the sentencing court for a vacation *of the offender's record of conviction*." (Emphasis added); *see also State v. Hawkins*, 200 Wn.2d 477, 494, 519 P.3d 182

---

[10] Peterson asserts as one of the alternate grounds for dismissal of this appeal that the Snohomish County Prosecuting Attorney lacks standing to pursue claims of injury it perceives on behalf of drug courts or the Washington State Patrol (WSP). The legislature authorized courts to establish therapeutic courts under RCW 2.30.030 to provide treatment or address underlying issues contributing to criminal behavior. *State v. Daniels*, 8 Wn. App. 2d 160, 163, 437 P.3d 723 (2019). The application of CrR 7.8 directly to criminal charges dismissed pursuant to successful completion of a drug court program affects the State's pecuniary interest in therapeutic court operations to the extent that it implicates fees collected pursuant to statute to fund such programs. As a result, the State has a present and substantial interest supporting its standing to challenge the trial court's order.

However, RCW 36.27.020(3) limits a prosecuting attorney's authority, permitting a prosecutor to only "appear for and represent the state, county, and all school districts *subject to the supervisory control and direction of the attorney general* in all criminal and civil proceedings in which the state or the county or any school district in the county may be a party." (Emphasis added.) RCW 43.10.040 further establishes that the attorney general, not the prosecuting attorney, represents state agencies in legal proceedings. Since the "Washington state patrol . . . [is a] general authority Washington law enforcement agenc[y]," and no statute grants county prosecutors the authority to represent the WSP in this context, it should be represented by the attorney general's office. *State v. Hardgrove*, 154 Wn. App. 182, 186, 225 P.3d 357 (2010) (quoting former RCW 10.93.020(1) (2006)). Accordingly, the State lacks standing to represent the WSP in this matter and we decline to consider any arguments it purports to offer on behalf of the WSP in light of the fact that the order implicates its oversight of the state criminal history database.

(2022) (explaining qualifying conviction is prerequisite for vacatur). Since Peterson was never convicted, she does not qualify for vacatur under RCW 9.94A.640. *See Hawkins*, 200 Wn.2d at 489-90.

The State further argues that Peterson was under no obligations from the order that dismissed her VUCSA charge and suffered no ongoing consequences from the dismissal. We disagree. Our statutory scheme treats dismissal and vacatur distinctly, depriving Peterson of the full relief available under *Blake*.

In supplemental briefing, the State contends that under RCW 10.97.050, neither a dismissed charge nor a vacated conviction can be disseminated to the public, as it is nonconviction data. Again, we disagree. A "vacated conviction record is not subject to chapter 10.97 RCW as nonconviction data." *State v. Riley*, 143 Wn. App. 41, 45, 177 P.3d 115 (2008). "'Nonconviction data'" is defined as follows:

> [*A*]*ll criminal history record information* relating to an incident which has not led to a conviction or other disposition adverse to the subject, and for which proceedings are no longer actively pending. There shall be a rebuttable presumption that proceedings are no longer actively pending if more than one year has elapsed since arrest, citation, charge, or service of warrant and no disposition has been entered.

RCW 10.97.030(8) (emphasis added). Nonconviction data includes only "'[c]riminal history record information,'" which is defined as follows:

> [I]nformation contained in records collected by criminal justice agencies, other than courts, on individuals, *consisting of identifiable descriptions and notations of arrests, detentions, indictments, informations, or other formal criminal charges, and any disposition arising therefrom, including acquittals by reason of insanity, dismissals based on lack of competency, sentences, correctional supervision, and release.*

The term includes any issued certificates of restoration of opportunities and any information contained in records maintained by or obtained from criminal justice agencies, other than courts, which *records provide individual identification of a person together with any portion of the individual's record of involvement in the criminal justice system as an alleged or convicted offender*.

RCW 10.97.030(4) (emphasis added); *see also Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 422, 259 P.3d 190 (2011). The distinction between dismissed charges and those that have been vacated matters.

In *State v. Haggard*, our Supreme Court analyzed the effect of a dismissed misdemeanor conviction under the so-called "washout"[11] provision of RCW 9.94A.525(2)(c) and the question of whether dismissal is analogous to vacatur. 195 Wn.2d 544, 549-55, 461 P.3d 1159 (2020). It compared a deferred prosecution and dismissal with a vacated conviction, stating, "Vacation under RCW 9.96.060 sets out specific requirements deemed necessary by the legislature." *Id*. at 561. A conviction that has been dismissed after successful completion of a deferred sentence does not carry the same legal effect as a vacated conviction. *Id*. at 562. A defendant with a dismissed conviction must still separately seek vacatur in order for that conviction to be omitted from their criminal history. *Id.*

Vacatur fully restores an individual, removing "'all penalties and disabilities resulting from the offense.'" *Hawkins*, 200 Wn.2d at 489-90 (quoting RCW 9.94A.640(4)(a)). However, nonconviction data can still impact a defendant's criminal history in future cases because a dismissed conviction under RCW

---

[11] The Sentencing Reform Act of 1981, chapter 9.94A RCW, directs that a felony "washes out and is omitted from a defendant's offender score as long as [they are] not convicted of any crime within [a prescribed period of time from] the last date of release of confinement." *Haggard*, 195 Wn.2d at 546.

9.95.240 remains a "conviction" for certain purposes under the Sentencing Reform Act of 1981 (SRA).[12] *See In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 802, 272 P.3d 209 (2012).

Accordingly, the trial court abused its discretion when it concluded that a dismissal order was a judgment for purposes of CrR 7.8 relief, and separately, when it vacated a charge that did not result in a conviction.

### 2.    Drug Court Participation Fee is not an LFO

The State avers that Peterson's $900 participation fee was not a fine or LFO imposed as punishment for a conviction or as restitution to a victim, but rather, part of her agreement with the State in order to complete drug court as an alternative to traditional prosecution of her VUCSA charge.

Peterson, however, relies on *Civil Survival Project* and *Nelson* to contend that CrR 7.8 is the proper procedural mechanism for recoupment of the fee she paid pursuant to an unconstitutional statute.  The question of whether CrR 7.8 allows such relief is one of first impression.  The answer is no.

In *Nelson*, the United States Supreme Court held that "[w]hen a criminal conviction is invalidated by a reviewing court and no retrial will occur," due process requires the state "to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction."  581 U.S. at 130. Peterson correctly notes that the *Nelson* Court emphasized that "[a]bsent conviction of a crime, one is presumed innocent."  *Id*.  However, *Nelson* does not support Peterson's claim for relief because she never lost that presumption as she

---

[12] Ch. 9.94A RCW.

was never convicted. There, the conviction that triggered the imposition of fees and costs had been reversed and yet the formerly accused person was obligated to demonstrate actual innocence under a different state statute in order to recoup those LFOs. *Id.* at 133-34. The Supreme Court's determination regarding due process and return of LFOs was due in large part to the restoration of the presumption of innocence after an improperly procured criminal conviction. *Id.* at 129.

The factual distinctions between Peterson's case and *Nelson* render it inapposite. During oral argument before this court, while Peterson further suggested that her mandatory drug court participation fee is similar to fines and fees as contemplated in *Nelson*, she did not identify an invalidated conviction or otherwise claim that she had ever been legally adjudicated guilty on the 2015 VUCSA.[13] Despite her contention premised on *Nelson*, she ultimately conceded that the drug court fee was not an LFO as defined by statute.[14]

In *Civil Survival Project*, this court held that "CrR 7.8 is the exclusive procedural means by which to seek refund and cancellation of superior court imposed *Blake* LFOs." 24 Wn. App. 2d at 578. Division Two of this court recently reaffirmed this principle in several cases,[15] holding that CrR 7.8 is the only proper

---

[13] Wash. Ct. of Appeals oral arg., *supra*, at 9 min., 10 sec.

[14] *Id.* at 9 min., 39 sec.

[15] *State v. Danielson*, No. 57675-9-II (Wash. Ct. App. Oct. 22, 2024) (unpublished), *review granted*, 4 Wn.3d 1009 (2025); *State v. Nelson*, 32 Wn. App. 2d 679, 695-97, 558 P.3d 197 (2024), *review granted*, 4 Wn.3d 1009 (2025); *State v. Sindars*, 33 Wn. App. 2d 504, 510, 562 P.3d 826 (2025).

The defendants in these three cases have each petitioned for review at our Supreme Court. The Supreme Court accepted review on the distinct question of whether CrR 7.8 may be used to confer *Blake* relief where LFOs were satisfied by completion of community service, and consolidated *Danielson* and *Nelson*. *See* Ord. Granting Rev. and Consolidating, *State v. Danielson,* No. 103627-2, consolidated with *State v. Nelson*, No. 103673-6 (Wash. Mar. 5, 2025). That decision is still

avenue for *Blake* defendants to seek reimbursement of LFOs. Peterson's reliance on *Civil Survival Project* is misplaced as the procedural posture and facts here are distinct. The payment at issue is not an LFO, but a drug court participation fee. RCW 9.94A.030(31) defines an LFO as follows:

> "Legal financial obligation" means a sum of money that is ordered by a superior court of the state of Washington for legal financial obligations which may include restitution to the victim, statutorily imposed crime victims' compensation fees as assessed pursuant to RCW 7.68.035, court costs, county or interlocal drug funds, court-appointed attorneys' fees, and costs of defense, fines, and any other financial obligation that is assessed to the offender *as a result of a felony conviction*.

(Emphasis added.) In 2021, the legislature created a fund to assist counties in refunding LFOs impacted by the *Blake* ruling:

> (6) $23,500,000 of the general fund—state appropriation for fiscal year 2022 is provided solely to establish *a legal financial obligation aid pool* to assist counties that are obligated to *refund legal financial obligations previously paid by defendants* whose *convictions or sentences* were affected by the *State v. Blake* ruling. County clerks may apply to the administrative office of the courts for a grant from the pool to assist with extraordinary costs of these refunds. State aid payments made to a county from the pool must first be attributed to any legal financial obligations refunded by the county on behalf of the state. The office must establish an application process for county clerks to seek funding and an equitable prioritization process for distributing the funding.[16]

(Emphasis added.) Peterson argues in her brief that prior to the CrR 7.8 hearing, the "*Blake* Refund Bureau" confirmed it would provide her refund if presented with a court order. But again, the fee at issue here is not a state-mandated LFO, but an administrative fee imposed by Snohomish County on participants in one of its

---

pending. *Sindars* was stayed pending resolution of the consolidated cases. *See* Ord. Granting Rev. and Staying, *State v. Sindars*, No. 103861-5 (Wash. June 4, 2025).

[16] LAWS OF 2021, ch. 334, § 115.

statutorily-authorized therapeutic court programs. RCW 10.01.160 permits courts to require defendants to pay costs associated with their prosecution, including costs for pretrial supervision and deferred prosecution programs. Because an LFO may only be imposed pursuant to a criminal conviction and Peterson was not convicted, *Civil Survival Project* does not control on this issue.

A key question for this panel, then, is whether the reasoning of *Blake* extends to fees imposed by local jurisdictions pursuant to prosecution under an unconstitutional statute where the accused opts to pursue a therapeutic option instead of exercising their constitutional right to trial or acceptance of a plea agreement with the State.

B. Insufficient Identification of Applicable CrR 7.8 Provision

The trial court's order on Peterson's CrR 7.8 motion explicitly stated,

The charge of POSSESSION OF A CONTROLLED SUBSTANCE contained in the Information filed on August 18, 2015, against the above-named defendant, is constitutionally defective pursuant to CrR 7.8(2) [sic] and *State v. Blake* and is hereby vacated.

Because CrR 7.8(2) does not exist, this reference appears to be a typographical error. The ruling fails to reference a correct subsection of CrR 7.8 and the only other source it cites is *Blake*. As such, the record is unclear as to which cited authority the trial court relied on, and for what reasons, when deciding Peterson's motion to vacate.

At the motion hearing, Peterson presented a due process argument as the basis for her claim that she was entitled to a refund of the participation fee. As we explained in Part II.A.2 *supra*, the authority she offered in support of that position

was distinguishable and not controlling. Peterson relied on *Blake* as the sole authority for her motion to vacate her VUCSA charge in the following argument:

> There's another side matter that we're asking for is to vacate the possession of controlled substance. I understand that this is a little bit wonky, but the basis for this is *Blake*, and that is what *Blake* said. It is void. And it may be, in some minds, a difference without a distinction, but the law treats a dismissal differently than a vacation, and so there's benefits to have something vacated in addition to dismissed.
>
> And so I think the—if the [c]ourt is maybe wondering, Under what authority? There isn't an RCW. Under what authority do I vacate something that's been dismissed? I'd say *Blake* is the authority that said these are all voided. It's unconstitutional. It should be vacated if requested.

While the State contended that Peterson should file a PRP in the Court of Appeals to determine whether she had a valid due process claim, the trial court disagreed and stated,

> I can deal with it down here. I mean, the facts aren't in dispute. There's no factual issue that needs to be made. I think it's well taken under [CrR] 7.8.
>
> Yeah. I would vacate. I would vacate the dismissal, which vacates the entire thing. I think there is—I think there is a difference between the two. In fact, I know there is.
>
> And then I would order the refund of the fees that were paid. I am probably the first one in the state so far now, that we know of?

The record of proceedings establishes that the parties referred to CrR 7.8 broadly, but no one at any point in the transcript of the hearing ever identified the precise subsection that provides the legal authority for the trial court's retention of the motion. The original motion Peterson filed, however, expressly sought relief under CrR 7.8(b)(4) and (5).

CrR 7.8(b)(4) permits a court to "relieve a party from a final judgment, order, or proceeding" when "[t]he judgment is void." "A void judgment is one entered by

a court 'which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved.'" *State v. Zavala-Reynoso*, 127 Wn. App. 119, 122, 110 P.3d 827 (2005) (internal quotation marks omitted) (quoting *Dike v. Dike*, 75 Wn.2d 1, 7, 448 P.2d 490 (1968)). Peterson argued that her dismissal order was void because the trial court lacked authority to dismiss her VUCSA charge based on successful drug court completion. This was so, she further contended, because the former drug possession statute under which she was charged had always been a legal nullity, meaning the State never had authority to charge her. Thus, Peterson averred, she should never have faced the choice to proceed with traditional prosecution or complete drug court. Our Supreme Court rejected a similar argument in *State v. Olsen*, holding that despite *Blake*'s retroactive effect, "simple drug possession was a valid crime" at the time Olsen entered his guilty plea. 3 Wn.3d 689, 701, 555 P.3d 868 (2024). Even setting aside the incorrect assumption that a dismissal order functions as a judgment, Peterson's CrR 7.8(b)(4) argument fails substantively because the State had authority to charge her with possession of a controlled substance under former RCW 69.50.4013(1) (2015) at the time she entered drug court.

Peterson's other offered basis, CrR 7.8(b)(5), is the rule's catchall provision that permits relief for "[a]ny other reason justifying relief from the operation of the judgment." "CrR 7.8(b)(5) allows for relief in situations not covered by subsections (1) through (4), and 'where the interests of justice most urgently require.'" *State v. Lamb*, 175 Wn.2d 121, 128, 285 P.3d 27 (2012) (citation omitted) (quoting *State*

*v. Shove*, 113 Wn.2d 83, 88, 776 P.2d 132 (1989)).  To obtain relief under this subsection of the rule, a defendant must show either that a constitutional error resulted in actual prejudice or that a nonconstitutional error caused a fundamental defect leading to a complete miscarriage of justice.  *State v. Pascuzzi*, 29 Wn. App. 2d 528, 533, 541 P.3d 415), *review denied*, 3 Wn.3d 1007 (2024).

In *Lamb*, our Supreme Court reversed a trial court's ruling that relied on CrR 7.8(b)(5) without applying the proper standard.  175 Wn.2d at 128.  The court emphasized that a "finding of 'manifest injustice' does not automatically establish that relief is available under CrR 7.8(b)(5)."  *Id*.  Here, the record establishes that the trial court similarly failed to analyze CrR 7.8(b)(5).

Accordingly, the trial court abused its discretion when it misapplied the law and retained jurisdiction over the CrR 7.8 motion.  It issued an order that clearly exceeded its authority under the rule, *Blake*, and the vacatur statute.  While a motion under CrR 7.8 was not the proper vehicle for the relief sought by this particular defendant, for the reasons set out herein, our opinion should not be misconstrued as foreclosing other available avenues for the relief ultimately sought: deletion or orders of nondisclosure of nonconviction data pursuant to chapter 10.97 RCW and refund of therapeutic court participation fees under the holding and policy reasons set out in *Blake*.  It is conceivable, too, that evidence of either payment of drug court fees or the continued existence of nonconviction data, or both, could satisfy the restraint showing required for a matter to be considered as a PRP.  However, the manner by which the trial court granted

Peterson relief here rests on a misinterpretation and misapplication of the law, and as such, was an abuse of discretion.

Reversed.

_____

WE CONCUR:

_Feldman, J._          _Birk, J._