

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 17 2015

*Madsen, C.*
CHIEF JUSTICE

This opinion was filed for record
at 8:00am on Sept 17, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 91112-6 |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| RICKEY ARELIOUS BEAVER, | ) | |
| | ) | Filed    SEP 17 2015 |
| Petitioner. | ) | |
| | ) | |

FAIRHURST, J.—We must determine whether due process requires the trial court find current mental illness to revoke an insanity acquittee's conditional release. Chapter 10.27 RCW, the statutory scheme that governs insanity acquittals, requires the trial court find that a conditionally released insanity acquittee violated the conditions of release or poses a threat to the public to revoke an insanity acquittee's conditional release. Chapter 10.27 RCW does not require the trial court make a finding regarding the acquittee's mental state at a conditional release revocation hearing. We hold that the statute satisfies due process and affirm the Court of Appeals.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Rickey Arelious Beaver was found not guilty by reason of insanity on a charge of residential burglary. The court found that Beaver suffered from a mental disease or defect and held that he posed a substantial danger to other persons and presented a substantial likelihood of committing criminal acts jeopardizing public safety or security unless kept under further control by the court. The court committed Beaver to Western State Hospital (WSH) and to the custody of the secretary of the Department of Social and Health Services (secretary).

The court granted Beaver's conditional release[1] in 2007.[2] Between 2007 and his final discharge in 2014, Beaver violated the terms of his conditional release several times. Because of these violations and because the trial court continued to

---

[1] "'Conditional release' means modification of a court-ordered commitment, which may be revoked upon violation of any of its terms." RCW 10.77.010(3).

[2] The conditions and terms of Beaver's initial conditional release prohibited him from leaving the state without permission from his supervising community corrections officer (CCO) appointed by the Department of Corrections; possessing explosive devices, firearms, or any other weapon; or using alcohol or controlled substances. In addition, the terms of his release required him to maintain good conduct in the community and not to violate any laws or ordinances. Beaver was also required to take his prescribed medications and submit to random urinalysis and blood or breath testing whenever requested by his CCO. The conditions required him to enter into a state certified inpatient drug and alcohol program for at least 28 days, and upon discharge he was required to attend an outpatient drug and alcohol program. After release from the drug and alcohol program, Beaver was required to reside at a location approved by his CCO. Beaver was to remain in prescribed geographic boundaries and notify his CCO prior to making any changes in address or employment. Beaver was also required to report to his CCO as requested and cooperate with the CCO's monitoring activities.

find that Beaver was a danger to society, the terms of his conditional release were modified or revoked several times.

In 2011, Beaver petitioned for final discharge. WSH submitted a letter to the court recommending Beaver's final discharge because WSH found that Beaver did not show signs or symptoms of mental illness that could not be explained by substance abuse. The Public Safety Review Panel (PSRP)[3] reviewed Beaver's treatment record, evaluations, and letters from the prosecuting attorney and Beaver's defense counsel and opposed Beaver's discharge. The State and Beaver obtained independent mental health evaluations. Brian Judd, PhD, for the State, opined that Beaver remained mentally ill and a threat to the community. Brendon Scholtz, PhD, for Beaver, recommended Beaver's final discharge.

In July 2011, a jury trial began on Beaver's petition for final discharge. Before resting, Beaver voluntarily withdrew his petition. Beaver agreed that he continued to suffer from a mental illness that made him a threat to public safety—the criteria for a defendant who is not guilty by reason of insanity under RCW 10.77.110—and stipulated to an agreed order of conditional release.

On conditional release, Beaver violated the terms by using cocaine, by drinking alcohol and driving a motor vehicle, and by being charged with the crime

---

[3]The PSRP was created in 2010 and convenes to make independent assessments of the public safety risk involved in the secretary's recommendations to the court. RCW 10.77.270.

of driving under the influence of alcohol. In January 2013, the State successfully moved to revoke Beaver's conditional release.

During the conditional release revocation hearing, Beaver did not request a mental health examination pursuant to RCW 10.77.190(2). In fact, the first and only time that there was any discussion at the conditional release revocation hearing about Beaver's mental disease or defect was when the trial judge, after stating that he would revoke, expressed concern about recommitting Beaver when WSH had earlier indicated Beaver no longer continued to suffer from a mental illness.[4] However, the trial judge recognized there were contradictory opinions and his comments were not incorporated into the trial court's findings.

Beaver appealed the trial court's order revoking his conditional release, arguing that due process required a finding of current mental illness before the court could revoke his conditional release and recommit him to WSH. While this appeal was pending, Beaver filed a petition for final discharge under RCW 10.77.200(3). Based on agreement of the parties, Beaver was granted conditional release in

---

[4]"I am satisfied that Mr. Beaver is in violation of his conditional release. Now, I am going to revoke the conditional release. . . . The other concern that I had . . . [is] apparently the treating doctors at Western State at least at the last examination were of the opinion that there was no mental health disease. That was reviewed and . . . the public safety board thought he was a risk to public safety." Verbatim Report of Proceedings (VRP) at 30. "I am satisfied he is a risk to the public." VRP at 32.

4

October 2013. Then in May 2014, again based on agreement of the parties, Beaver was granted final discharge.[5]

Although the Court of Appeals found that the case was moot, it reviewed the merits and held that substantive and procedural due process do not require a judicial finding of current mental illness before the court can revoke conditional release. *State v. Beaver*, 184 Wn. App. 235, 239, 336 P.3d 654 (2014). We granted Beaver's petition for review. *State v. Beaver*, 182 Wn.2d 1020, 345 P.3d 783 (2015).

## II.    ISSUES

A.    Whether Beaver's claim, though moot, is of continuing and substantial public interest that this court should consider its merits.

B.    Whether revoking an insanity acquittee's conditional release without a judicial finding that the acquittee currently suffers from a mental illness violates procedural or substantive due process.

## III.    ANALYSIS

A defendant charged with a crime may plead and prove insanity as an affirmative defense. *State v. Platt*, 143 Wn.2d 242, 246, 19 P.3d 412 (2001). The defendant must show by a "preponderance of the evidence that he or she was insane

---

[5]In May 2014, both WSH and the PSRP were in agreement that Beaver was no longer suffering from a mental defect.

at the time of the offense or offenses with which he or she is charged."[6] RCW 10.77.080. A defendant acquitted by reason of insanity may be committed to a hospital, conditionally released, or released without condition. RCW 10.77.110. Conditional release may be revoked if the acquittee poses a threat to society or violates the conditions of his or her release. RCW 10.77.190(4). Beaver contends that the due process clauses of the Fourteenth Amendment to the United States Constitution[7] and article I, section 3 of the Washington State Constitution[8] require the court additionally to find that the acquittee is mentally ill at the time the court revokes conditional release. Because Beaver was finally discharged from WSH and the custody of the secretary in 2014, we must first determine whether to decide the merits of Beaver's moot claim. If so, we must decide if due process requires a judicial finding of current mental illness to revoke conditional release.

---

[6]To establish the defense of insanity, it must be shown that:

    (1) At the time of the commission of the offense, as a result of mental disease or defect, the mind of the actor was affected to such an extent that:

    (a) He was unable to perceive the nature and quality of the act with which he is charged; or

    (b) He was unable to tell right from wrong with reference to the particular act charged.

Former RCW 9A.12.010 (1975).

[7]"[N]or shall any state deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, § 1.

[8]"No person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. 1, § 3.

A.   Beaver's claim, though moot, is of continuing and substantial public interest, and we should decide the merits

As a general rule, we do not consider cases that are moot or present only abstract questions. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012); *see also Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). "A case is technically moot if the court can no longer provide effective relief." *Hunley*, 175 Wn.2d at 907. Beaver's case is moot because he was finally discharged in May 2014 while this appeal was pending.

Even if a case becomes moot, the court has the discretion to decide an appeal if the question is one of continuing and substantial public interest. *Sorenson*, 80 Wn.2d at 558. Mootness is a jurisdictional concern. *State v. Deskins*, 180 Wn.2d 68, 80, 322 P.3d 780 (2014). As a threshold matter, we must determine whether Beaver's claim is of continuing and substantial public interest.

To determine whether a case presents an issue of continuing and substantial public interest, we consider three factors: "'[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question.'" *Hunley*, 175 Wn.2d at 907 (alterations in original) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 736, 214 P.3d 141 (2009)). As a fourth factor, the court may also consider the level of

adversity between the parties. *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988). The continuing and substantial public interest exception has been used in cases dealing with constitutional interpretation, the validity of statutes or regulations, and matters that are sufficiently important to the appellate court. *Id.* at 449. This exception is not used in cases that are limited to their specific facts. *Id.*

All factors weigh in favor of deciding whether, as Beaver contends, due process requires a finding of current mental illness before the conditional release of an insanity acquittee may be revoked pursuant to RCW 10.77.190. Cases involving interpretation of the constitution or interpretation of statutes are public in nature and provide guidance to future public officials. *Hunley*, 175 Wn.2d at 907. This issue is likely to reoccur because other insanity acquittees are subject to conditional release revocation proceedings. *See id.* Additionally, both parties sufficiently briefed the legal issue. *Hart*, 111 Wn.2d at 448. Deciding the merits of Beaver's moot claim is of continuing and substantial public interest.

B.    Revoking an insanity acquittee's conditional release without a judicial finding that the acquittee currently suffers from a mental illness does not violate substantive or procedural due process

We review constitutional challenges de novo. *State v. Bao Dinh Dang*, 178 Wn.2d 868, 874, 312 P.3d 30 (2013). Freedom from bodily restraint is at the core of the liberty interest protected by the due process clause. *Foucha v. Louisiana*, 504

U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992). "The commitment of a criminally insane person is a deprivation of liberty and subject to this constitutional guaranty of due process." *State v. Wilcox*, 92 Wn.2d 610, 612, 600 P.2d 561 (1979). The due process clause of the Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The due process clause confers both substantive and procedural protections. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006). The substantive component of the due process clause bars wrongful and arbitrary government conduct, notwithstanding the fairness of the implementing procedures. *Foucha*, 504 U.S. at 80. Even if government conduct satisfies substantive due process, the procedural component of the due process clause requires that government action be implemented in a fundamentally fair manner. *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).[9]

1.     Substantive due process

In the context of involuntary commitment, substantive due process requires that the nature of commitment bear some reasonable relationship to the purpose for

---

[9]Neither party asserted that the state due process clause provides greater protections than the federal due process clause. We therefore presume the provisions are coextensive in this case. *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 394, 20 P.3d 907 (2001) ("[I]n the absence of the petitioner's [*State v.*] *Gunwall*, [106 Wn.2d 54, 720 P.2d 808 (1986)] analysis, we presume a coextensive provision.").

which the individual is committed. *Foucha*, 504 U.S. at 79. An involuntary commitment scheme satisfies substantive due process when there is a periodic review of the patient's suitability for release. *See State v. Klein*, 156 Wn.2d 102, 110, 124 P.3d 644 (2005).

We have held that "in order to confine an insanity acquittee to institutionalization against his or her will, the trial court must make two determinations: first, that the acquittee suffers from a mental illness and second, that the acquittee is a danger to others." *Bao Dinh Dang*, 178 Wn.2d at 876. The United States Supreme Court observed that a verdict of guilty by reason of insanity establishes that the defendant committed an act that constitutes a criminal offense and that he committed this act because of mental illness. *Jones v. United States*, 463 U.S. 354, 363, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983). The commitment can continue until the individual is either no longer dangerous or no longer mentally ill. *Foucha*, 504 U.S. at 77-78.[10]

Under chapter 10.77 RCW, if a defendant is acquitted of a crime by reason of insanity and it is found that "such defendant is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing

---

[10]Chapter 10.77 RCW provides an acquittee with opportunities to seek final discharge based on recovery of his or her mental health. An acquittee must be discharged if it is demonstrated that he or she no longer suffers from a mental disease or defect, notwithstanding any potential danger to the community. *Klein*, 156 Wn.2d at 114.

public safety or security, unless kept under further control by the court or other persons or institutions, the court shall order his or her hospitalization." RCW 10.77.110(1). Each insanity acquittee committed to a hospital or other facility or conditionally released "shall have a current examination of his or her mental condition made by one or more experts or professional persons at least once every six months." RCW 10.77.140.

In addition to periodic examinations, an acquittee may apply for his or her final discharge by demonstrating that he or she no longer suffers from a mental illness. "Upon application by the committed or conditionally released person, the secretary shall determine whether or not reasonable grounds exist for release." RCW 10.77.200(1). If the secretary approves of the release, he or she shall authorize the acquittee to petition the court. *Id.* If the acquittee has not applied for his or her own release but the secretary reasonably believes that release is appropriate, the secretary may petition the court. RCW 10.77.200(2). Before petitioning the court or authorizing a petition, the secretary must submit his or her recommendation to the PSRP. RCW 10.77.270(3). The PSRP completes an independent assessment of the public safety risk associated with the secretary's recommendation and may indicate whether it is in agreement. The PSRP's assessment is submitted to the court and the acquittee's counsel. *Id.* Once the petition is served, the court must set a hearing within 45 days. RCW 10.77.200(3). At the hearing,

11

[t]he burden of proof shall be upon the petitioner to show by a preponderance of the evidence that the person who is the subject of the petition no longer presents, as a result of mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

*Id.*

An acquittee who has received a mental examination may make an application to the secretary for conditional release. RCW 10.77.150(1). The secretary may also recommend an acquittee for conditional release. RCW 10.77.150(2). "Conditional release is a mechanism whereby mentally ill persons of varying degrees of dangerousness can be conditionally reintroduced into society where it is determined the conditions will reasonably mitigate the dangerousness." *State v. Reid*, 144 Wn.2d 621, 630, 30 P.3d 465 (2001). Conditional release is subject to periodic review to determine if the acquittee should remain conditionally released. RCW 10.77.180. If the prosecuting attorney, the secretary, the secretary of the Department of Corrections, or the court "reasonably believes that a conditionally released person is failing to adhere to the terms and conditions of his or her conditional release," they may apprehend the acquittee and seek revocation of the acquittee's conditional release. RCW 10.77.190(2).

Before conditional release can be revoked, the statute requires the court to hold a hearing where the issues are limited to whether the conditionally released

person did or did not adhere to the terms and conditions of his or her release, or whether the person presents a threat to public safety. RCW 10.77.190(4). If the court determines the acquittee did not adhere to the terms and conditions of the conditional release, the court can continue or modify the conditions of release or the court may revoke the conditional release. *Id.* Beaver argues that substantive due process requires a judicial finding of current mental illness to revoke an acquittee's conditional release.

A judicial finding of current mental illness at a conditional release revocation hearing is not constitutionally required. We presume that an acquittee's insanity continues until the acquittee or the secretary proves by a preponderance of the evidence that the acquittee no longer suffers from a mental disease or defect. *Klein*, 156 Wn.2d at 114 ("'Washington law since 1905 has presumed the mental condition of a person acquitted by reason of insanity continues and the burden rests with that individual to prove otherwise.'" (quoting *Platt*, 143 Wn.2d at 251 n.4)); *see* RCW 10.77.200(3). The presumption of insanity is consistent with substantive due process principles. It is logical for the legislature to assume that an acquittee continues to have a mental illness that makes him or her dangerous. *Platt*, 143 Wn.2d at 252. The presumption of insanity continues during conditional release. *See id.*

During conditional release, as well as while committed to a hospital, an acquittee's mental health is periodically reviewed. The statute provides that the

acquittee or the secretary may petition for the acquittee's release at any time during conditional release or commitment. Revocation of conditional release and recommitment does not limit the acquittee's opportunity to seek final discharge on the basis that he or she is no longer mentally ill.

The revocation of Beaver's conditional release satisfied substantive due process and was supported by sufficient factual findings. When Beaver was initially committed in 2005, the court found that he suffered from a mental illness and posed a substantial danger to the community. Beaver's mental illness was established by the original findings in 2005 and was presumed to continue. In 2011, as part of Beaver's stipulated conditional release, he agreed that he continued to suffer from a mental disease or condition. At the conditional release revocation hearing in 2013, Beaver did not attempt to prove that he regained his mental health. At that hearing, the court found that Beaver violated the terms and conditions of his release. In addition, the court found that Beaver posed a substantial threat to public safety.

We hold that substantive due process does not require the trial court make a finding of current mental illness to revoke conditional release. It is presumed that the acquittee's insanity continues throughout conditional release until proved otherwise. Moreover, the statutory scheme provides for periodic reviews of the acquittee's mental health and the acquittee has opportunities to prove that he or she no longer suffers from a mental defect and to petition for final discharge.

14

2. Procedural due process

Procedural due process requires that when the State seeks to deprive a person of a protected interest, the State provides the individual adequate notice of the deprivation and a meaningful opportunity to be heard. *Amunrud*, 158 Wn.2d at 216. Due process is a flexible concept and calls for different procedural protections depending on the interests at stake. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Beaver asserts that procedural due process requires a judicial finding of mental illness at a conditional release revocation hearing.

To determine whether the procedures provided by a statutory scheme are constitutionally sufficient, we must analyze the governmental and private interests affected. *Id.* We consider three factors: the private interest that will be affected by the state action; the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and the State's interest, including the function involved and the fiscal and administrative burdens that additional procedures might entail. *Id.* at 335.

As to the first factor, the private interest in liberty or freedom from state constraint is substantial. *See Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979) ("[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."). However, the court's revocation of an insanity acquittee's conditional release implicates a

15

conditional liberty interest dependent on the observance of terms and conditions. *Bao Dinh Dang*, 178 Wn.2d at 883. Although the Fourteenth Amendment due process guaranties apply to the revocation of a limited liberty interest, the due process analysis is limited. *Id.* at 883-84.

As to the second factor, the procedures to revoke an acquittee's conditional release in chapter 10.77 RCW provide protection against erroneous deprivation of liberty. The acquittee is entitled to counsel at any and all stages of the proceedings. RCW 10.77.020(1). Conditional release may be revoked or modified only if the secretary, the prosecuting attorney, the secretary of the Department of Corrections, or the court reasonably believes that the acquittee is failing to adhere to the terms and conditions of his or her conditional release, or if a hospital or another facility determines that the acquittee presents a threat to public safety. RCW 10.77.190(2), (3). If the secretary determines that the acquittee is violating the terms of his or her release, the secretary may order that the acquittee be immediately taken into custody. *Id.* The court must be notified that the acquittee was apprehended within one judicial day, and the court must set a hearing within 30 days to determine whether the acquittee's conditional release should be modified or revoked. *Id.* At the hearing, the acquittee or acquittee's counsel can confront and cross-examine witnesses unless there is good cause for disallowing confrontation. *See Bao Dinh Dang*, 178 Wn.2d at 883-84. In addition, the prosecuting attorney and the acquittee have the right to

request an immediate mental examination of the acquittee.[11] RCW 10.77.190(2). After the hearing, the court is not required to revoke conditional release. The court has the discretion to modify the conditions of release. RCW 10.77.190(4).

The statutory scheme as a whole provides significant procedural protections against erroneous deprivation of liberty. *Platt,* 143 Wn.2d at 246 n.3; *see also State v. Derenoff,* 182 Wn. App. 458, 467, 332 P.3d 1001 (2014) ("[A]lthough risk of an erroneous deprivation of liberty is a real concern, the procedures currently in place under chapter 10.77 RCW provide significant procedural safeguards for insanity acquittees."). The statutory scheme provides the acquittee with sufficient opportunities to rebut the presumption that he or she is insane. The mental health of the acquittee is periodically reviewed every six months, RCW 10.77.140, and the acquittee can apply to be finally discharged or released from confinement, RCW 10.77.200(1), (5). The acquittee may be committed to a facility only for as long as the statutory maximum sentence of the crime charged. RCW 10.77.025(1). Although the risk of erroneous deprivation is high, the statute provides adequate procedural protections.

---

[11]Interestingly, Beaver did not request an immediate mental examination. In fact, the first time any question of his mental disease or defect arose was when the trial court raised it sua sponte after revoking Beaver's conditional release.

As to the third factor, the government has a strong interest in the protection of public safety by detaining mentally unstable individuals who present a threat to society. *Salerno*, 481 U.S. at 748. The conditional release revocation hearing is designed to efficiently determine whether a conditionally released insanity acquittee is in violation of the terms of his or her release and presents a danger to society. *Derenoff*, 182 Wn. App. at 468. A full review of the acquittee's mental condition is not appropriate at a conditional release hearing, and the State has a strong interest in avoiding such a review. *See Jones*, 463 U.S. at 366.

After examining and balancing the three *Mathews* factors, the current statutory scheme provides sufficient procedural safeguards to ensure that the State will not erroneously deprive a conditionally released acquittee's limited liberty. The statutory scheme satisfies procedural due process.

## IV.   CONCLUSION

The statutory mechanism to revoke an acquittee's conditional release satisfies substantive and procedural due process. The trial court is not required to make a finding of current mental illness at a conditional release hearing because during conditional release the acquittee is presumed insane. The presumption of insanity begins when the defendant is found not guilty by reason of insanity, and it continues until the acquittee or the secretary proves otherwise. If the acquittee's mental health recovers, the statute provides for periodic examinations of the acquittee's mental

18

health, as well as mechanisms by which the acquittee can petition for a final discharge. Moreover, the statute provides sufficient procedural protections for acquittees. We affirm the Court of Appeals.

Fairhurst, J

WE CONCUR:

Madsen, C.J.                    Wiggins, J

Johnson, J                      Gonzalez, J.

Owens, J                        Gordon McCloud, J.

Stephens, J.                    Yu, J

20