**FILED**
**JANUARY 6, 2026**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Matter of the Detention of: | ) | No. 39918-4-III |
| | ) | |
| B.P.H. | ) | UNPUBLISHED OPINION |
| | ) | |

MURPHY, J. — S.H.[1] appeals a superior court order committing her to 180 days of involuntary treatment under Washington's "Involuntary Treatment Act" (ITA), chapter 71.05 RCW. She contends the trial court erred by (1) failing to ascertain whether she personally agreed to the stipulated commitment order that was signed only by her appointed counsel, (2) disregarding procedural mandates of the ITA, (3) depriving her of due process, (4) subjecting her to ineffective assistance of counsel, and (5) entering findings of fact and conclusions of law unsupported by substantial evidence.

We hold that the absence in the record of any expression of personal agreement from S.H. to waive her right to a hearing and accept the 180-day commitment violated the guarantee of procedural due process under the Fourteenth Amendment to the United States Constitution. We therefore reverse the commitment order and remand for a probable cause hearing or full evidentiary hearing on the pending 180-day petition.

---

[1] B.P.H.'s preferred name has the initials S.H. and her preferred pronouns are she/her. We refer to S.H. by her preferred initials and pronouns.

No. 39918-4-III
*In re Det. of B.P.H.*

We do not reach the remaining assignments of error, as they are rendered moot by our disposition.

FACTUAL BACKGROUND

Over a three-year period, S.H. was charged in state court with multiple crimes. These charges remained pending while S.H. underwent competency restoration. After three successive evaluations, which occurred within multiple competency restoration periods, S.H. was ultimately found incompetent to stand trial.

The trial court dismissed the pending criminal charges without prejudice and ordered S.H.'s commitment to Eastern State Hospital (ESH) for a 72-hour evaluation, as well as the filing of a civil commitment petition.

*PROCEDUAL BACKGROUND*

*Petition for involuntary treatment*

On June 5, 2023, ESH petitioned in Spokane County Superior Court to involuntarily commit S.H. for 180 days, alleging two grounds for commitment: (1) S.H. was gravely disabled, and (2) S.H. was found incompetent and had criminal charges dismissed pursuant to former RCW 10.77.086(4) (2022), having committed acts that constituted felonies, and, as a result of a behavioral health disorder, presented a substantial likelihood of repeating similar acts. The petition did not request civil commitment based on a likelihood of S.H. causing serious harm.

2

A medical doctor from ESH signed the petition for 180-day involuntary treatment. A one-page note from the doctor was appended to the petition. An affidavit from a licensed psychologist was filed in support of the petition, with the psychologist concluding S.H. was (1) gravely disabled and (2) had been determined incompetent with criminal charges constituting a felony dismissed pursuant to former RCW 10.77.086(4), with a civil commitment evaluation attached. The psychologist's civil commitment evaluation contained a summary of the allegations from the police reports and described the alleged facts underlying S.H.'s criminal charges between 2019 and 2021, and extensively described S.H.'s previous restoration treatments, behavioral health symptoms, history of dangerous and violent acts against others, and formal diagnoses. The psychologist concluded:

> A review of [S.H.'s] current records, in conjunction with the clinical interview, lead this evaluator to opine that [S.H.]'s current symptoms pose a **high risk** of immediate decompensation and physical harm resulting from 1) a failure to provide for [her] essential human needs of health or safety and 2) criminal conduct in the community.

Clerk's Papers (CP) at 23.

The trial court appointed counsel for S.H. and held an initial hearing on the petition. At this initial hearing, the State requested a continuance to secure witnesses and plan for a full-day hearing and perhaps longer. S.H.'s counsel objected, arguing S.H. had a right to a hearing within 10 days, and S.H. was "ready and willing to move forward

with [her] hearing," even offering to move forward on the grave disability aspect as the State did not appear prepared to proceed on anything else. Rep. of Proc. (June 16, 2023) at 6. The court granted a one-week continuance in consideration of judicial economy. At the next hearing, the court articulated a continuance was previously granted and since the last hearing, all parties and the court tried to set a hearing date, but this had not been accomplished. The court set aside two days for the trial.

No trial was held on either day scheduled by the court for this event. Rather, on July 26, 2023, what was to be the second scheduled trial day, the court entered findings, conclusions, and an order civilly committing S.H. for 180 days of involuntary treatment.

*Agreed order committing S.H. for involuntary treatment*

The commitment order states "[t]he court set a hearing" on the petition for 180 days of involuntary treatment, and at the hearing S.H. was represented by counsel. CP at 1. The order also states that it "incorporates by reference the oral findings of fact and conclusions of law." CP at 2. S.H. was not present when this order of commitment was entered. The trial court did not hold a hearing nor did it make oral findings of fact or conclusions of law. The agreed order was simply presented to the trial court for signing and entry. The order was signed by S.H.'s attorney, the State's attorney, and the court, but the signature line for "Respondent" was left blank. CP at 6.

The order contained a checked box, showing it was an "Agreed Order." CP at 2. Under the court's findings of fact, the order stated:

> [S.H.] *does not agree that all statements contained in the petition are true and correct* but does agree that if the case went to hearing, the court would find that [S.H.] suffers from a mental disorder and is gravely disabled by clear, cogent and convincing evidence. *The court finds allegations contained in the petition are true and correct* and incorporated by reference herein as findings of fact. The best interests of [S.H.] will not be served by less restrictive treatment that is an alternative to Involuntary Treatment.

CP at 4 (emphasis added). The order further found the State proved by clear, cogent, and convincing evidence that S.H. suffered from several mental health conditions.

The order contains three grounds for commitment. First, S.H. had felony charges constituting violent offenses dismissed without prejudice after an incompetency determination. The court found that as a result of a behavioral health disorder, S.H. presented a substantial likelihood of repeating similar acts. Second, the court found S.H. to be gravely disabled and that the facts set forth in the petition supported this finding. Third, the court found S.H. presented a likelihood of serious harm, again relying on facts set forth in the petition.

Based on the agreed order, S.H. was committed to ESH for 180 days. She has been recommitted for subsequent 180-day periods. Notably, subsequent commitment orders do not include that S.H. presents a likelihood of serious harm. At the time of this appeal, S.H. remains involuntarily committed.

5

S.H. appeals.

ANALYSIS

S.H. contends the trial court violated her procedural due process rights by entering an order of civil commitment without evidence that she personally agreed to the order. Since involuntary civil commitment represents a significant infringement on personal freedom, and the record contains no explicit expression of S.H.'s personal agreement to the order of commitment, we concur with S.H. that there was an infringement on her procedural due process rights.

We review claims of due process violations de novo. *In re Welfare of D.E.*, 196 Wn.2d 92, 102, 469 P.3d 1163 (2020).

We have long acknowledged that "'[c]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *In re Det. of B.H.*, 18 Wn. App. 2d 46, 49, 488 P.3d 887 (2021) (quoting *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)). Procedural due process demands, at a minimum, "notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *In re Det. of Morgan*, 180 Wn.2d 312, 320, 330 P.3d 774 (2014) (internal quotation marks omitted) (quoting *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006)). "Due process is a flexible concept and calls for different procedural protections depending on the interests at stake." *State v. Beaver*,

184 Wn.2d 321, 336, 358 P.3d 385 (2015) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). Under *Mathews*, we balance three factors: (1) the nature of the private interest affected by governmental action, (2) the risk of erroneous deprivation of the private interest under the procedures used, and (3) the government's interest, including the fiscal and administrative burdens imposed by additional procedures. 424 U.S. at 335.

Attorneys in civil commitment proceedings have the authority to bind their clients, but an attorney has "'no right to stipulate away a valuable right of [their] client'" without the client's authorization. *Graves v. P. J. Taggares Co.*, 94 Wn.2d 298, 303, 616 P.2d 1223 (1980) (internal quotation marks omitted) (quoting *In re Welfare of Houts*, 7 Wn. App. 476, 481, 499 P.2d 1276 (1972)). There is a presumption that a client does not waive a fundamental right. *See In re Quesnell*, 83 Wn.2d 224, 239, 517 P.2d 568 (1973). A client waives a privilege by intentional relinquishment or abandonment of a known right or privilege. *Id.* at 239-40. A stipulation that a client is mentally ill, without the client's authorization, compromises the client's substantial rights. *See Houts*, 7 Wn. App. at 481.

Here, neither party disputes that the right to freedom from physical restraint is a fundamental right. S.H. faced 180 days of involuntary detention and loss of her fundamental right to liberty. Because her fundamental liberty interest was at stake in the

proceedings, her statutory right to a hearing under the ITA represented a substantial right. *See Quesnell*, 83 Wn.2d at 239-40; RCW 71.05.310.

While both parties agree S.H.'s attorney must have been authorized to waive S.H.'s right to a hearing, they disagree as to whether the record is sufficient to demonstrate that S.H.'s attorney acted with S.H.'s authority. S.H. was involuntarily committed for 180 days without a hearing and without any personal expression of her intent to waive her right to a hearing. The record is void as to S.H.'s participation in the agreed order. S.H. was not present when the order was presented to the trial court. S.H. did not sign the agreed order. No affidavit or declaration from S.H. accompanied the commitment order. No colloquy or inquiry was made of S.H.'s counsel to assess whether S.H. knew of the agreed order and acquiesced to its entry.

The record not only lacks evidence of S.H.'s involvement but contains internal inconsistencies that raise concerns. First, in earlier proceedings, S.H., through the same counsel, objected to any delay and demanded that her commitment hearing occur promptly. This indicates S.H. strongly valued her statutory right to a hearing. Second, the language in the civil commitment order itself appears contradictory. The order states, "[S.H.] does not agree that all statements contained in the petition are true and correct but does agree that if the case went to hearing, the court would find that [S.H.] suffers from a mental disorder and is gravely disabled by clear, cogent and convincing evidence." CP at

8

4. While this statement indicates S.H. agreed to a finding that she was gravely disabled, the order committed S.H. on two additional grounds: (1) likelihood of serious harm and (2) likelihood to commit acts similar to the dismissed felony charges. The order contains no statement as to whether S.H. conceded sufficient evidence existed to support these two other bases for commitment. Significantly, the initial petition did not allege that S.H. posed a likelihood of serious harm. It is curious that S.H. would agree to this newly asserted basis when she previously objected to the two other bases for commitment. These inconsistencies undermine the assumption that S.H. personally agreed to the order.

The State correctly notes that the parties marked the "Agreed Order" box within the form, accompanied by a statement that "[S.H.], after consultation with counsel, agrees to the entry of this order." CP at 4. However, this boilerplate language does not verify that S.H. actually reviewed the order or authorized her agreement.

The ITA provides significant procedural protections to individuals facing involuntary commitment. *See* RCW 71.05.217 (granting individuals in civil commitment proceedings the right to an attorney, to a hearing, to request a jury trial, to present evidence, to remain silent); *see also* RCW 71.05.310 (the State bears the burden to provide clear, cogent, and convincing evidence). But, when the right to a hearing is relinquished absent any explicit personal affirmation of waiver, the ITA's enumerated procedural safeguards become ineffective. Simply because S.H. had the right to attend a

hearing, to remain silent, or to present evidence, does not mean that S.H., in fact, received the benefits of those rights. Under these circumstances, no safeguards existed to ensure S.H. personally waived her right to a hearing. Therefore, the proceeding was constitutionally inadequate.

The State's interest in administrative efficiency and in encouraging settlements does not outweigh S.H.'s fundamental liberty interest when the proposed settlement is six months of involuntary inpatient treatment. The risk of the erroneous deprivation of liberty, under the procedures employed here, is unacceptably high.

Therefore, we hold that the trial court denied S.H.'s procedural due process rights by entering an 180-day commitment order without any confirmation that S.H. personally agreed to waive her right to a hearing on an issue dealing with a fundamental right.

When a commitment order is reversed for procedural due process violations that do not go to the merits of the petition, the appropriate remedy is to vacate the order and remand for the occurrence of the hearing that should have been held in the first place. *See In re Welfare of M.B.*, 195 Wn.2d 859, 877, 467 P.3d 969 (2020). Because the original 180-day petition remains pending and the statutory timelines have long expired, the trial court shall conduct a probable cause hearing under RCW 71.05.320 or, if probable cause is found, a full evidentiary hearing on the existing petition within 14 days of the issuance of our mandate.

CONCLUSION

The trial court denied S.H. procedural due process by accepting a stipulated 180-day commitment order without any inquiry into whether S.H. personally consented to the waiver of her hearing rights. The commitment order is reversed, and the case is remanded for a hearing on the pending petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Cooney, J.

_____
Birk, J.[†]

---

[†] The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).

11