**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| CURTIS P. BRAKE, | No. 59560-5-II |
| Respondent, | |
| v. | |
| MICHELLE K. JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Curtis Brake and Michelle Johnson began dating in 2017 or 2018 and were in a romantic relationship for several years. While they were together, Brake purchased a home in Gig Harbor. The two lived together there until the relationship soured and they broke up in 2022. After the breakup, Johnson refused to leave the home. Brake initiated a lawsuit, asserting quiet title to the home and raising several other related claims, including ejectment, trespass, and breach of contract based on a dispute over money Brake had lent Johnson.

Johnson asserted that she and Brake were in a committed intimate relationship and that she therefore had a right to partial ownership of the home. She raised this argument first in a separate lawsuit and later, when the trial court declined to consolidate her case with Brake's, as an affirmative defense to Brake's claims.

Over Johnson's objections, the quiet title case was tried by a jury, which determined as part of its verdict that no committed intimate relationship existed. Johnson appeals, claiming that the trial court abused its discretion when it allowed the jury, rather than a judge, to decide the

committed intimate relationship issue. While this appeal was pending, the trial court held a bench trial on Johnson's separately filed committed intimate relationship lawsuit, and the trial judge in that case held that there was no committed intimate relationship.

Brake now moves to dismiss Johnson's appeal in this case because it is moot. We agree this appeal is moot. Because all of the issues Johnson raises are rooted in her objection to the committed intimate relationship issue being tried to a jury, we decline to address her other challenges to the trial court's decisions. We therefore dismiss this appeal.

FACTS

I. BACKGROUND

Brake and Johnson originally met in high school in the 1980s, after which they lost touch for a number of years. They reconnected in 2017 through mutual friends.

Brake and Johnson have differing accounts of the progression of their relationship after they reconnected. According to Brake, Johnson asked him for financial assistance before they began dating and Brake loaned her $10,000. Not long after, Brake learned that Johnson was at risk of losing her home and offered to let her stay at his home in DuPont so that she could rent out her home. Johnson moved into Brake's home in February 2018. Brake and Johnson began dating in summer 2018.

Brake bought a new home in Gig Harbor in 2019. Brake asserted that Johnson was "heavily" involved in the decision-making during the home buying process. Clerk's Papers at 103. But Brake paid the down payment and only Brake's name was on the mortgage deed and title to the home. Over the course of their relationship Brake continued to loan Johnson money.

2

Johnson's account differs in some respects. According to Johnson, she and Brake began dating before she moved in with Brake and before Brake gave her any financial help. She maintains that the relationship was serious and that the reason the Gig Harbor home was purchased solely in Brake's name was because of her poor credit. Johnson also stated that all of the financial assistance Brake gave her was in support of their relationship and not a loan.

The relationship ended in 2022, and Brake asked Johnson to move out of the Gig Harbor home where they were living together. Johnson refused and, according to Brake, told him that he should move out instead.

## II. LITIGATION

Brake filed a lawsuit in June 2022 asserting a claim of quiet title to the Gig Harbor home purchased in 2019. The lawsuit also asserted several other claims including ejectment, trespass, unjust enrichment, and breach of contract based on Johnson's failure to repay the loans Brake had given her.

In August 2022 Johnson filed a petition to divide the property and debts of a couple that had been in a committed intimate relationship. On the same day Johnson filed a motion to dismiss Brake's quiet title action. The trial court denied the motion to dismiss.

In October 2022 Brake moved to expedite trial in the quiet title lawsuit, claiming that Johnson would not leave his house and was being very hostile toward him. The trial court granted the motion and set trial for April 4, 2023. Brake demanded a jury and Johnson moved to strike Brake's jury demand.

Meanwhile, in January 2023 Johnson filed an answer to Brake's complaint. The answer included as an affirmative defense that Johnson and Brake were in a committed intimate

relationship. A month later, Johnson moved to consolidate the quiet title case and the separate committed intimate relationship case.

In March 2023, the trial court denied Johnson's motion to strike the jury demand, reserving the question of whether Johnson's defense that she and Brake were in a committed intimate relationship would be decided by a judge or jury. It also denied Johnson's motion to consolidate the quiet title case with her separately filed committed intimate relationship case.

Johnson successfully moved to continue trial twice over the next several months. The trial court also granted one motion by Brake to continue trial, with the new date set on August 1, 2023. On the day before trial was to begin, Johnson moved to convert her affirmative defense of a committed intimate relationship into a counterclaim under CR 8(c) and asked to bifurcate the trial, with a judge determining the committed intimate relationship claim and a jury determining the rest of the issues. The trial court denied the motion.

The jury trial proceeded as scheduled and the jury returned a verdict for Brake. It found by special verdict that Brake had title to the Gig Harbor home, that Brake and Johnson were not in a committed intimate relationship, and that Johnson owed Brake $144,873.94 as repayment for the money he had loaned her. The jury also determined that Johnson should pay Brake an additional $36,640.04 for the time she lived in Brake's home after the couple broke up. The trial court then entered a final judgment adding attorney fees and costs to the total judgment against Johnson.

III. APPEAL AND RESOLUTION OF SEPARATE COMMITTED INTIMATE RELATIONSHIP CASE

Johnson appeals the judgment below. She maintains that a jury should not have been allowed to decide the question of whether she and Brake were in a committed intimate relationship. Accordingly, Johnson claims that the trial court erred when it denied her motion to strike Brake's

jury demand; when it denied her motion to consolidate the separate quiet title and committed intimate relationship cases; when it denied her motion to convert her affirmative defense of a committed intimate relationship into a counterclaim under CR 8(c); and when it submitted the affirmative defense of a committed intimate relationship to a jury.

It is undisputed that while this appeal was pending, the same trial judge who presided over the jury trial held a bench trial to decide Johnson's separate committed intimate relationship case. In April 2025, the trial court decided on the merits that there was no committed intimate relationship between Johnson and Brake.[1] Brake now argues that Johnson's appeal is moot because a judge heard her committed intimate relationship claim and reached the same result on the merits of that issue as the jury in the quiet title case.

ANALYSIS

I. MOOTNESS BASED ON COLLATERAL ESTOPPEL

Brake argues that this case is moot. Johnson assigns error to the fact that a jury, and not a judge, determined that she and Brake were not in a committed intimate relationship. She points out that the committed intimate relationship doctrine is equitable in nature, and that equitable claims are "tried to the court and not to a jury." Br. of Appellant at 22 (citing 21 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW WITH FORMS § 57:23 (2d ed. 2015). But Brake notes that a judge has since decided that there was no committed intimate relationship. Brake contends that collateral estoppel would prevent relitigation of the committed intimate relationship question if we were to remand. He reasons that because the

---

[1] The trial court stated that it could have decided this question on a collateral estoppel theory because of the previous jury trial but chose not to do so. Instead, collateral estoppel was an alternative basis for its ruling.

committed intimate relationship theory was Johnson's only argument for why she had a claim to partial ownership of the house; there is no meaningful relief the trial court could offer if that issue is precluded.

Johnson contends that her case is not moot but does not dispute that collateral estoppel would apply on remand. She argues that her "chances of prevailing on remand are not part of the mootness analysis" and that "reversal and remand themselves are meaningful relief" even if a new trial would have the same result. Reply Br. of Appellant at 11. She also argues that the judicial determination that there was no committed intimate relationship "does not have [a] res judicata effect on Brake's quiet title claim . . . , breach of contract claims . . . , [or] unjust enrichment claims." *Id.* at 13-14.

We agree with Brake that this appeal is moot.

"As a general rule, we do not consider cases that are moot or present only abstract questions." *State v. Beaver*, 184 Wn.2d 321, 330, 358 P.3d 385 (2015). "'A case is technically moot if the court can no longer provide effective relief.'" *Id.* (quoting *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)). The preclusive doctrines of collateral estoppel and res judicata will render a case moot when applicable. *See Harley H. Hoppe & Assocs. v. King County*, 162 Wn. App. 40, 52, 255 P.3d 819 (2011).

Collateral estoppel, also called issue preclusion, bars relitigation of an issue of fact when the issue "'has [already] been determined by a valid and final judgment'" that the party against whom it is asserted had "a full and fair opportunity to litigate." *Weaver v. City of Everett*, 194 Wn.2d 464, 473-74, 450 P.3d 177 (2019) (internal quotation marks omitted) (quoting *State v. Dupard*, 93 Wn.2d 268, 273, 609 P.2d 961 (1980)). Collateral estoppel differs from the related

doctrine of res judicata or claim preclusion, which "precludes relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits." *Weaver*, 194 Wn.2d at 480.

This case is moot because Johnson is collaterally estopped from having the committed intimate relationship issue decided again. All of Johnson's assignments of error hinge on the proposition that only a judge, and not a jury, can determine whether a committed intimate relationship existed. A judge has now determined that there was no committed intimate relationship in a valid final judgment. If we were to remand this case, the issue could not be relitigated in the trial court. There is no possibility of a different outcome for any claims that are impacted by whether a committed intimate relationship existed.

Johnson's argument that the resolution of the committed intimate relationship claim cannot have a res judicata effect on the quiet title, breach of contract, and unjust enrichment claims because they are different claims is unavailing. Res judicata is a distinct doctrine from collateral estoppel. To the extent that Brake's claims are affected by the committed intimate relationship issue, collateral estoppel bars their relitigation. And because all of Johnson's assignments of error relate to the trial court's decision to let a jury try the committed intimate relationship issue, there is no other reason to remand any of these claims for reconsideration. *See* Br. of Appellant at 24 (asserting that Brake's quiet title, breach of contract, and unjust enrichment claims all depended on the outcome of the committed intimate relationship affirmative defense).

Johnson also claims that meaningful relief is still available because we could "reverse both the quiet title case and the [committed intimate relationship] case and remand for a single trial." Reply Br. of Appellant at 1. Brake contends, and Johnson does not dispute, that Johnson did not

appeal the committed intimate relationship case within the 30-day window for doing so. Because she failed to appeal the final judgment in that case, there is no possibility that the decision will be reversed in a separate appeal. The trial court's decision in Johnson's committed intimate relationship case is now final.

Johnson argues that we should somehow reverse the judgment in that separate case based on RAP 12.2. But this reasoning ignores the requirements for bringing an appeal in Title 2 and Title 5 of the Rules of Appellate Procedure. We decline to relieve Johnson of her obligations to comply with those and other requirements under the court rules. Nor can we ignore that the final judgment in that case is not subject to review in this entirely separate appeal of Brake's quiet title action.

We hold that Johnson's claims here are moot.

## II. THE SUBSTANTIAL PUBLIC INTEREST EXCEPTION

Johnson argues that even if her claims are technically moot, we should decide them under the substantial public interest exception to the mootness doctrine. She contends that trial courts "are in need of authoritative guidance" on the question of whether "courts should consolidate all claims . . . that relate to property or debts into a single action to be heard by a judge" any time a committed intimate relationship is raised "by counterclaim, separate action, or affirmative defense." Reply Br. of Appellants at 16.

Brake argues that applying the substantial public interest exception would be inappropriate here because "[t]his is a purely private dispute[] unique to these parties"; "[t]here is already a substantial body of caselaw and court rules . . . govern[ing] how [these] cases are properly structured and . . . tried"; and this litigation "is messy. . . [and] not a clean and clear case as is

preferred for making quality caselaw." Br. of Resp't at 40-41. Brake also contends that this issue is unlikely to reoccur. We agree with Brake.

"Even if a case becomes moot, the court has the discretion to decide an appeal if the question is one of continuing and substantial public interest." *Beaver*, 184 Wn.2d at 330. "To determine whether a case presents an issue of continuing and substantial public interest, we consider three factors: '[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question.'" *Id.* at 330 (alterations in original) (internal quotation marks omitted) (quoting *Hunley*, 175 Wn.2d at 907). In addition to those essential factors, we may also consider "the level of genuine adverseness and the quality of advocacy of the issues." *Hart v. Dep't of Soc. and Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988).

"The continuing and substantial public interest exception has been used in cases dealing with constitutional interpretation, the validity of statutes or regulations, and matters that are sufficiently important to the appellate court." *Beaver*, 184 Wn.2d at 331. Issues that involve determining "[w]hether case law has been properly interpreted" are also more likely to be sufficiently "public in nature" to warrant review even if technically moot. *In re Pers. Restraint of Mines*, 146 Wn.2d 279, 285, 45 P.3d 535 (2002). However, we will not apply the public interest exception in cases that are limited by specific facts. *Beaver*, 184 Wn.2d at 331.

We decline to apply the public interest exception here. First, determining Johnson's claims on their merits would involve no constitutional interpretation or evaluation of statutes or regulations. And neither party suggests that deciding this case would require us to reassess current case law. Indeed, it is well established that the committed intimate relationship doctrine is

equitable in nature, *In re Pennington*, 142 Wn.2d 592, 602, 14 P.3d 764 (2000), and that equitable claims are ordinarily determined by a judge rather than a jury, *see Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980) (no right to a jury trial when issues are primarily equitable). That the question went to a jury here speaks to the unusual procedural background of this particular case.

Johnson concedes that she should have raised her committed intimate relationship claim as a counterclaim to Brake's quiet title claim. Instead, she filed a completely separate lawsuit and sought to have Brake's quiet title lawsuit dismissed. After the trial court declined to dismiss Brake's claim, Johnson moved to strike Brake's jury demand and raised the committed intimate relationship as an affirmative defense to the quiet title action. She also moved to consolidate the quiet title case and her separate committed intimate relationship case. When her motions were denied, she continued to litigate the committed intimate relationship issue in two separate cases: as petitioner in the lawsuit she brought, and as an affirmative defense in the lawsuit Brake brought to quiet title. She did not seek to convert her affirmative defense to a counterclaim or ask for a bifurcated trial until the day before trial was set to begin.

Johnson's committed intimate relationship claim was ultimately decided by a jury as an affirmative defense and then again later by a judge in the separate lawsuit because of her litigation choices. The atypical manner in which this case unfolded suggests that it is too fact-specific to be of public interest or to provide helpful guidance to future decision-makers. Additionally, it demonstrates that this question is unlikely to reoccur frequently. For these reasons, we decline to apply the public interest exception, and we dismiss this appeal as moot.

## CONCLUSION

We dismiss this appeal because the case is now moot. Because all of the issues Johnson raises are rooted in her objection to the committed intimate relationship issue being tried to a jury, we decline to address her other challenges to the trial court's decisions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

CRUSER, J.